R E C E I V E D

FEB 1 2 2014

U.S. C.A. 3rd

# THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

CARLET D. WARD,                     )
                                    )
            Appellant,              )        C.A. No. 13-3562
                                    )
    v.                              )
                                    )
MBNA AMERICA (Bank of America),     )
                                    )
            Appellee(s)             )
                                    )

## APPENDIX

In Support of the Attached Appellant's Opening Brief to the United States Court of Appeals for the Third Circuit in accordance with F.R.A.P., Third Circuit LAR and IOP (Third Circuit Internal Operating Procedures)

*Carlet D. Ward*

Carlet D. Ward, Pro Se
201 Voshells Mill Road
Dover, DE 19901
(302) 264-1895

Dated:___2/11/14___

# TABLE OF CONTENTS

Page

Table of Authorities                                                          iv

Authorities Principally Relied Upon

List of Parties

(I).  Jurisdictional Statement

(II). Statement of the Case:

    A.  Procedural History

        1.  Judgment In a Civil Case                                1-2
        2.  EEOC Dismissal and Notice of Rights                      3-4
        3.  Charge of Discrimination – EEOC Form 131                  5-7
        4.  Notice of Charge of Discrimination – EEOC
            Form 131                                               8
        5.  Complaint Under Title VII of the Civil Rights Act of 1964, Civil Action
            Number 10-759                                          9-11
        6.  Plaintiff's Charge As Served Dated March 3, 2011, Pro Se   12-13
        7.  Attorney List of Contacts Made to Date                    14-15
        8.  U.S. District Court Order to Proceed in Forma Pauperis under 28
            U.S.C.§ 1915                                           16
        9.  U.S. District Court Exit USM 285 Form for Defendants Mag.
            Consent to U.S. Marshal for Service                     17
      10. Defendant's Answer to Complaint                           18-24
      11. Defendant's Amended Answer to Complaint                   25-31
      12. Defendant's Motion to Dismiss/Memorandum in Support of
            Defendant's Motion to Dismiss                          32-41
      13. Plaintiff's Motion to Reject/Deny Defendant's Motion to Dismiss   42-46
      14. U.S. District Court Appointed Attorneys to Represent Plaintiff
            (Pro Bono)                                             47-49
      15. January 3, 2013 Series of Email Communication Between
            Plaintiff/Attorney Jack Shrum/Defendant's Attorneys, Elena Marcuss
            and James McMackin, III Re:  Settlement Discussion   .   50-53
      16. Plaintiff's Handwritten Letter to U.S. District Judge Sue L. Robinson, Dated
            January 28, 2013                                       54-57

17. Correspondence from Plaintiff's Attorney Shrum re: Engagement
Letter; Document Request; and, Continuation for Deposition,
dated February 25, 2013                                                          58-59

18. Plaintiff's Correspondence to Appointed Attorney, Jack Shrum and
the Law Firm of Archer & Greiner, P.C. re: Contract Agreement,
dated February 26, 2013                                                          60-64

19. March 8, 2013 Plaintiff's Response Letter to Attorney Shrum
Declining to Sign Contract as is under the terms and conditions
as prescribed                                                                    65-68

20. March 12, 2013 Letter from Attorney Jack Shrum, Archer &
Greiner, P.C. enclosing a Court Order to Remove him as Plaintiff's
Attorney; Attachment: Court Order, dated 3/12/13 and signed by
U.S. District Court Judge Sue L. Robinson                                        65-69

21. Plaintiff's Answer to Attorney Shrum's Motion to Withdraw As
Counsel to Plaintiff, dated March 14, 2013                                       70-73

22. March 13, 2013 Defendant's Acknowledgement of Local Rule 7.1.1              74-78

23. Defendant's Motion to Compel, dated March 13, 2013                           79-85

24. April 2, 2013 Plaintiff's Answer to Defendant's Motion to Compel

25. May 17, 2013 Defendant's Motion for Summary Judgment/
Opening Brief in Support of Summary Judgment                                     86-88

26. U.S. District Court Notification & Order to Postpone Pretrial
Conference and Jury Trial as issued and signed by Judge Sue L.
Robinson, dated May 23, 2013                                                     89-90

27. Plaintiff's Motion to Quash; Strike; and Out of Order, dated
June 4, 2013 – (Plaintiff's recognizes that the Notary Public
Dated Stamp is the correct date for Plaintiff's Motion and, not as
dated on May 4, 2013)                                                            91-94

28. Plaintiff's Letter of Objection to U.S. District Court Judge Sue L.
Robinson's postponement of the pretrial conference and jury trial,
dated July 23, 2013                                                              95-98

29. Judgment in a Civil Case Motion for Summary Judgment Granted
to Defendants in this case, Dated July 23, 2013                                  99-100

30. Plaintiff's timely Notice of Appeal, Application and, Paperwork to
the U.S. Court of Appeals for the Third Circuit as filed on
August 20, 2013                                                                  101-110

31. MBNA America Guide To Part-Time Employment Handbook                          111-115

32. MBNA America's Equal Opportunity Statement                                   116

33. September 5, 2005 Correspondence to Human Resources/
  Personnel, Stephanie, Hunt Valley Site via Jane Hahn, Personnel
  Dover Site                                                                                117-119
34. Complaint Processing Form, Affirmative Action Office – MBNA    120-124
35. Ward, Perry v. U.S. Federal Bureau of Investigation, et al
  Case# 92-CV-30170; Case# 92-CV-30170                                      125-128
36. Louis L. Freeh, Former FBI Director/MBNA America
  General Counsel – COINTELPRO (Black Bag Jobs), et al             129-132
37. Email Sent from Atty. Galvin Oppenmann of
  Mattleman, Weinroth & Miller 12/30/13

<u>Statutes</u>

Title VII of Civil Rights Act 1964
Title VII of Civil Rights Act 1991
Title VII of Civil Rights Act 1991, Section 1981; Section 113
Civil Rights Act of 1866
Civil Rights Act of 1871
Executive Order 11246
18 U.S.C. § 1512; 1503; 1505; and 371
28 U.S.C. § 1291
42 U.S.C.§ 1981; 2000e(b) and 2000e(a); 2000e(c); and 2000e(b)-(d); 2000e(5)(9)
Seventh Amendment of the U.S. Constitution
Thirteenth Amendment of the U.S. Constitution
Rule 110; Administrative Directive 178;
JGS Rep Rules 1.1 to 5.2
Judicial Guidelines:  Adoption, JGS;
Preamble; Court Proceedings,
JGS Rep Rules 4.1 to 4.3
Rule 56 F.C.R. Title V:  Disclosures & Discovery Procedures

## Table of Authorities

<u>Cases</u>

11 Empl.Prac.Dec. P 10,710

11 Fair Empl.Prac.Cas. 836,

Bethel v. Jendvco construction Corp., 570 F.2d. 1168 (3rd Cir. 1978)

Bette Clark v. Westrec Marina Management, CA Court of Appeal, First Appellate District 5 (2006)

Caldwell v. Paramount Unified School District, 1995 41 Cal. App. 4th 189, 205

Catchpole v. Brannon (1995) 36 Cal. App. 4th Cir. 237, 262

Clark v. Olinkraft, Inc., 556 F.2d. 1219 (1997)

Corley v. Jackson Police Department, 566 F.2d 994 (5th Cir. 1978)

Furnco Construction Corp. v. Waters 438 U.S. 567 (1978)

Griggs v. Duke Power Co., 401 U.S. 424 (1971)

Guz v. Bechtel Nat'l Inc. (2000) Cal. 4th 317, 355

Hazelwood School District v. U.S. 433 U.S. 299 (1977)

Hernandez, 109 Cal.App. 4th Cir. At p. 461

Loeb v. Textron, 600 F.2d. 1003, 1014 N-12 (1st Cir. 1979)

Mixon v. Fair Employment & Housing Comm. (1987) 192 Cal. App. 3d. 1306, 1317

Price Waterhouse v. Hopkins 490 U.S. 288 (1989)

Rowe v. GMC, 457 F.2d. 348 (5th Cir.. 1972)

Rutherford v. American Bank of Commerce, 565 F.2d. 1162 (10th Cir. 1977)

Sabol v. Snyder, 524 F.2d 1009 (5th Cir. 1975)

Sias v. City Demonstration Agency, 588 F.2d. 692 (9th Cir. 1978)

Teamsters v. U.S. 324 (1977)

Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265-66 (1977)

Ward, Perry v. U.S. Federal Bureau of Investigation, et al, U.S. 92-CV-30170

Washington v. Davis, 426 U.S. 229 (1976)

Williams v. Norfolk and Western railroad Co., 530 F,2d, 539

# THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

CARLET D. WARD,                             )
                                            )
                Appellant,                  )        C.A. No. 13-3562
                                            )
        v.                                  )
                                            )
MBNA AMERICA (Bank of America),             )
                                            )
                Appellee(s)                 )
                                            )

## APPENDIX

In Support of the Attached Appellant's Opening Brief to the United States Court of Appeals for the Third Circuit in accordance with F.R.A.P., Third Circuit LAR and IOP (Third Circuit Internal Operating Procedures)

*Carlet D. Ward*

Carlet D. Ward, Pro Se
201 Voshells Mill Road
Dover, DE 19901
(302) 264-1895

Dated: 2/11/14

# TABLE OF CONTENTS

Page

Table of Authorities      iv

Authorities Principally Relied Upon

List of Parties

(I). Jurisdictional Statement

(II). Statement of the Case:

    A. Procedural History
| | | |
|---|---|---|
| 1. | Judgment In a Civil Case | 1-2 |
| 2. | EEOC Dismissal and Notice of Rights | 3-4 |
| 3. | Charge of Discrimination – EEOC Form 131 | 5-7 |
| 4. | Notice of Charge of Discrimination – EEOC Form 131 | 8 |
| 5. | Complaint Under Title VII of the Civil Rights Act of 1964, Civil Action Number 10-759 | 9-11 |
| 6. | Plaintiff's Charge As Served Dated March 3, 2011, Pro Se | 12-13 |
| 7. | Attorney List of Contacts Made to Date | 14-15 |
| 8. | U.S. District Court Order to Proceed in Forma Pauperis under 28 U.S.C.§ 1915 | 16 |
| 9. | U.S. District Court Exit USM 285 Form for Defendants Mag. Consent to U.S. Marshal for Service | 17 |
| 10. | Defendant's Answer to Complaint | 18-24 |
| 11. | Defendant's Amended Answer to Complaint | 25-31 |
| 12. | Defendant's Motion to Dismiss/Memorandum in Support of Defendant's Motion to Dismiss | 32-41 |
| 13. | Plaintiff's Motion to Reject/Deny Defendant's Motion to Dismiss | 42-46 |
| 14. | U.S. District Court Appointed Attorneys to Represent Plaintiff (Pro Bono) | 47-49 |
| 15. | January 3, 2013 Series of Email Communication Between Plaintiff/Attorney Jack Shrum/Defendant's Attorneys, Elena Marcuss and James McMackin, III Re:  Settlement Discussion | 50-53 |
| 16. | Plaintiff's Handwritten Letter to U.S. District Judge Sue L. Robinson, Dated January 28, 2013 | 54-57 |

17. Correspondence from Plaintiff's Attorney Shrum re:  Engagement
    Letter; Document Request; and, Continuation for Deposition,
    dated February 25, 2013                                                    58-59
18. Plaintiff's Correspondence to Appointed Attorney, Jack Shrum and
    the Law Firm of Archer & Greiner, P.C. re:  Contract Agreement,
    dated February 26, 2013                                                    60-64
19. March 8, 2013 Plaintiff's Response Letter to Attorney Shrum
    Declining to Sign Contract as is under the terms and conditions
    as prescribed                                                             65-68
20. March 12, 2013 Letter from Attorney Jack Shrum, Archer &
    Greiner, P.C. enclosing a Court Order to Remove him as Plaintiff's
    Attorney;  Attachment: Court Order, dated 3/12/13 and signed by
    U.S. District Court Judge Sue L. Robinson                                  65-69
21. Plaintiff's Answer to Attorney Shrum's Motion to Withdraw As
    Counsel to Plaintiff, dated March 14, 2013                                 70-73
22. March 13, 2013 Defendant's Acknowledgement of Local Rule 7.1.1            74-78
23. Defendant's Motion to Compel, dated March 13, 2013                         79-85
24. April 2, 2013 Plaintiff's Answer to Defendant's Motion to Compel
25. May 17, 2013 Defendant's Motion for Summary Judgment/
    Opening Brief in Support of Summary Judgment                              86-88
26. U.S. District Court Notification & Order to Postpone Pretrial
    Conference and Jury Trial as issued and signed by Judge Sue L.
    Robinson, dated May 23, 2013                                               89-90
27. Plaintiff's Motion to Quash; Strike; and Out of Order, dated
    June 4, 2013 – (Plaintiff's recognizes that the Notary Public
    Dated Stamp is the correct date for Plaintiff's Motion and, not as
    dated on May 4, 2013)                                                      91-94
28. Plaintiff's Letter of Objection to U.S. District Court Judge Sue L.
    Robinson's postponement of the pretrial conference and jury trial,
    dated July 23, 2013                                                        95-98
29. Judgment in a Civil Case Motion for Summary Judgment Granted
    to Defendants in this case, Dated July 23, 2013                            99-100
30. Plaintiff's timely Notice of Appeal, Application and, Paperwork to
    the U.S. Court of Appeals for the Third Circuit as filed on
    August 20, 2013                                                            101-110
31. MBNA America Guide To Part-Time Employment Handbook                        111-115
32. MBNA America's Equal Opportunity Statement                                 116

33. September 5, 2005 Correspondence to Human Resources/
    Personnel, Stephanie, Hunt Valley Site via Jane Hahn, Personnel
    Dover Site                                                          117-119
34. Complaint Processing Form, Affirmative Action Office – MBNA    120-124
35. Ward, Perry v. U.S. Federal Bureau of Investigation, et al
    Case# 92-CV-30170; Case# 92-CV-30170                              125-128
36. Louis L. Freeh, Former FBI Director/MBNA America
    General Counsel – COINTELPRO (Black Bag Jobs), et al              129-132
37. Email Sent from Atty. Galvin Oppenmann of
    Mattleman, Weinroth & Miller 12/30/13

<u>Statutes</u>

Title VII of Civil Rights Act 1964
Title VII of Civil Rights Act 1991
Title VII of Civil Rights Act 1991, Section 1981; Section 113
Civil Rights Act of 1866
Civil Rights Act of 1871
Executive Order 11246
18 U.S.C. § 1512; 1503; 1505; and 371
28 U.S.C. § 1291
42 U.S.C.§ 1981; 2000e(b) and 2000e(a); 2000e(c); and 2000e(b)-(d); 2000e(5)(9)
Seventh Amendment of the U.S. Constitution
Thirteenth Amendment of the U.S. Constitution
Rule 110; Administrative Directive 178;
JGS Rep Rules 1.1 to 5.2
Judicial Guidelines:  Adoption, JGS;
Preamble; Court Proceedings,
JGS Rep Rules 4.1 to 4.3
Rule 56 F.C.R. Title V:  Disclosures & Discovery Procedures

# Table of Authorities

## Cases

11 Empl.Prac.Dec. P 10,710

11 Fair Empl.Prac.Cas. 836,

Bethel v. Jendvco construction Corp., 570 F.2d. 1168 (3rd Cir. 1978)

Bette Clark v. Westrec Marina Management, CA Court of Appeal, First Appellate District 5 (2006)

Caldwell v. Paramount Unified School District, 1995 41 Cal. App. 4th 189, 205

Catchpole v. Brannon (1995) 36 Cal. App. 4th Cir. 237, 262

Clark v. Olinkraft, Inc., 556 F.2d. 1219 (1997)

Corley v. Jackson Police Department, 566 F.2d 994 (5th Cir. 1978)

Furnco Construction Corp. v. Waters 438 U.S. 567 (1978)

Griggs v. Duke Power Co., 401 U.S. 424 (1971)

Guz v. Bechtel Nat'l Inc. (2000) Cal. 4th 317, 355

Hazelwood School District v. U.S. 433 U.S. 299 (1977)

Hernandez, 109 Cal.App. 4th Cir. At p. 461

Loeb v. Textron, 600 F.2d. 1003, 1014 N-12 (1st Cir. 1979)

Mixon v. Fair Employment & Housing Comm. (1987) 192 Cal. App. 3d. 1306, 1317

Price Waterhouse v. Hopkins 490 U.S. 288 (1989)

Rowe v. GMC, 457 F.2d. 348 (5th Cir.. 1972)

Rutherford v. American Bank of Commerce, 565 F.2d. 1162 (10th Cir. 1977)

Sabol v. Snyder, 524 F.2d. 1009 (5th Cir. 1975)

Sias v. City Demonstration Agency, 588 F.2d. 692 (9th Cir. 1978)

Teamsters v. U.S. 324 (1977)

Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265-66 (1977)

Ward, Perry v. U.S. Federal Bureau of Investigation, et al, U.S. 92-CV-30170

Washington v. Davis, 426 U.S. 229 (1976)

Williams v. Norfolk and Western railroad Co., 530 F,2d, 539

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                        )
                                       )
                Plaintiff,             )
                                       )
        v.                             ) Civ. No. 10-759-SLR
                                       )
MBNA AMERICA (Bank of America),        )
                                       )
                Defendant.             )

## JUDGMENT IN A CIVIL CASE

For reasons stated in the memorandum opinion and order of July 22, 2013;

IT IS ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of defendant MBNA America (Bank of America) and against plaintiff Carlet D. Ward.

_____
United States District Judge

Dated: 7/23/2013

_____
(By) Deputy Clerk

**Other Orders/Judgments**
1:10-cv-00759-SLR Ward v.
MBNA America

PaperDocuments,MEDIATION-
SRF

## U.S. District Court

### District of Delaware

**Notice of Electronic Filing**

The following transaction was entered on 7/23/2013 at 10:30 AM EDT and filed on 7/23/2013
**Case Name:**      Ward v. MBNA America
**Case Number:**    1:10-cv-00759-SLR
**Filer:**
**WARNING: CASE CLOSED on 07/23/2013**
**Document Number:** 56

**Docket Text:**
**JUDGMENT in favor of MBNA America against Carlet D. Ward (CASE CLOSED). Signed
by Judge Sue L. Robinson on 7/23/2013. (nmfn)**

**1:10-cv-00759-SLR Notice has been electronically mailed to:**

James H. McMackin, III JMcMackin@MorrisJames.com, clees@morrisjames.com,
jmcvey@morrisjames.com, jstamper@morrisjames.com

Elena D. Marcuss emarcuss@mcguirewoods.com

**1:10-cv-00759-SLR Filer will deliver document by other means to:**

Carlet D. Ward
201 Voshells Mill Star Hill Road
Dover, DE 19901

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/23/2013] [FileNumber=1886490-0
] [37ccd6704e6ce8abd75c2f18415d2574919f0c5e504eb47568120543ad570fc825f
4cc7f7e8f8e11dea26721ad79900e75c2b4cea7df4a70c470efd34b804f63]]

EEOC Form 161 (11/09)                    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**                    3

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Carlet Ward**                                From:  **Philadelphia District Office**
     **201 Voshell Mill Road**                              **801 Market Street**
     **Dover, DE 19901**                                    **Suite 1300**
                                                            **Philadelphia, PA 19107**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Kurt Jung,** | |
| **530-2006-02132** | **Supervisory Investigator** | **(215) 440-2617** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**Daniel Cabot,**                    c/7/10
**Acting District Director**         (Date Mailed)

cc:  **Debora E. Bartol, Assistant VP**
     **Employee Relations Case Manager**
     **BANK OF AMERICA CORPORATION**
     **NC2-112-01-01**
     **9630 S. Tyson Street**
     **Charlotte, NC 28273**

JS 44 (Rev. 1 207)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Carlet D. Ward

**DEFENDANTS**

MBNA America (Bank of America)

**(b)** County of Residence of First Listed Plaintiff  **Kent**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **New Castle**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

(Please see attached list of Attorney attempts to retain)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☒☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title VII of the Civil Rights Act of 1964

Brief description of cause:
Discrimination and retaliation due to race and color/complaint

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  $350,000/injunction

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE  9/6/10

SIGNATURE OF ATTORNEY OF RECORD
Carlet D. Ward (Pro Se)

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | 530-2006-02132 |

| Delaware Department of Labor | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Carlet Ward** | **(302) 697-7087** | **02-12-1956** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **201 Voshell Mill Road, Dover, DE 19901** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **MBNA AMERICA** | **500 or More** | **(800) 345-0397** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **The Cole House, 400 Christiana Road, Newark, DE 19713** | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE    ☐ COLOR    ☐ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN
☒ RETALIATION    ☐ AGE    ☐ DISABILITY    ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 03-20-2006    Latest: 03-20-2006
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. I worked for Respondent as a *Account Representative* from on or about *October 20, 2003* to on or about *03/10/06* . My racial identity is Black, I am fifty-one (51) years of age, and I am a qualified individual with a disability.

II. In September 2005 I filed an internal complaint with Respondent alleging discrimination against me on these bases. I alleged that I was denied the opportunity to post for various positions, denied appropriate remedies for my complaints about not being able to post, subjected to racial harassment, unjustly scrutinized and disciplined, and denied the same amount of work given to White employees in order to meet required productivity goals (and was then criticized for not meeting those goals).

III. On March 10, 2006, I applied for an available Bank Teller II position, for which I was interviewed on March 20, 2006. I was called that very night and told that I was not selected because I had been unable to immediately recall bank regulations from memory (when Respondent could see from my résumé that my last bank teller experience was in 2001). I was told that the successful candidate had been able to do so. (The regulations are always prominently posted at every teller station in a bank.)

IV. I believe my non-selection was in retaliation for my prior complaint of discrimination, in willful violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, and the Americans With Disabilities Act of 1990.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT <br><br> SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| _____  _____ <br> Date          Charging Party Signature | |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 530-2006-02132 |

**Delaware Department of Labor** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(Continued from previous page)*: Current Status As of April 2, 2007:

Since my employment with MBNA was terminated on March 10, 2006, I had been unemployed and without any income for the duration of six months. I was able to receive unemployment benefits weekly in the amount of $188.00 with a 30 day interruption of benefits due to a 401k withdrawal because of a financial hardship. My unemployment benefits were terminated in September 2006. My employment search was unsuccessful and was conducted extensively with searches that included State jobs advertised and available; local factory jobs, telemarketing jobs locally as well as in Newark and, private companies. On several occasions my credit report was used to not hire me on as an employee. I was without any income n benefits for the entire month of October however, I was able to get re-hired as a temporary seasonal sales associate at the Macy Company I used to work for at Lord + Taylor's Department Store in Fairfax, VA. Now owned + Acquired by The Federated Department Stores - namely "Macy's" which was converted into from the former Strawbridge's Department Store. I was still listed as being on the "books" as a 401k participant. I was hired for the Christmas Season from October 20 to January 10, 2007 at $7.00 per hour (a cut in pay) I worked and was assigned to the Men's Dept. store and had a perfect work attendance record as well as a "top" sales performer. Upon completion of the XMAS Season, I was (Please see the Attached Page)

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| _____  _____<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

to receive a special bonus AS AN incentive if as A Seasonal helper n hired, we worked a perfect XMAS schedule at 100% Attendance. To date, I have not received that bonus. I was also told by the Dept. Manager, Stephen Johnson that there would be another full-time regular Sales Associate position opening up after the holiday season and that he will let me know because I was considered to be a "Valued" valuable employee. He never let me know instead I was called back to work as a full-time Sales Associate (regular-hired) on February 20, 2006 to work in a different department in Women's Moderates/Better/Petites Clothing. I was still hired at $7.00 per Hour even though I was already experienced (Lord+Taylor's); I was also a high sales performer Both at Lord+Taylor's and, at Macy's (during XMAS) and, I was also denied a "pre-pay" department store card from Macy's So that I could receive the employee's 25% discount on all purchases citing not having good credit. And, the hostility still exists towards me in the work environment with the usual verbal harrassment and abuse. However, I am still gainfully employed as hired at Macy's Department Store Located at the Dover Mall, DuPont Highway in Dover, Delaware. And, no other job prospects for better pay r a better position has been offered to me.

Carlet D. Ward
04/02/07

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| ⌐ ¬<br><br><br>**Advice & Counsel - Agency Charges**<br>**BANK OF AMERICA CORPORATION**<br>NC1-026-02-50<br>**900 W. Trade Street, 2nd Floor**<br>**Charlotte, NC 28255**<br>L ⌐ | **Carlet Ward** |

| | THIS PERSON (check one or both) |
|---|---|
| | [X] Claims To Be Aggrieved |
| | [ ] Is Filing on Behalf of Other(s) |

EEOC CHARGE NO.
**530-2006-02132**

### NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)    [ ] The Equal Pay Act (EPA)    [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)    [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **22-APR-10** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [X] Please respond fully by **22-APR-10** to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **02-APR-10**
to **Stephanie Marino, ADR Coordinator, at (215) 440-2819**
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **William D. Cook,**<br>**Enforcement Manager** | **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1300**<br>**Philadelphia, PA 19107** |
|---|---|
| *EEOC Representative* | |
| *Telephone* **(215) 440-2634** | |

Enclosure(s): [X] Copy of Charge

| CIRCUMSTANCES OF ALLEGED DISCRIMINATION |
|---|
| [ ] Race  [ ] Color  [ ] Sex  [ ] Religion  [ ] National Origin  [ ] Age  [ ] Disability  [X] Retaliation  [ ] Genetic Information  [ ] Other |

**See enclosed copy of charge of discrimination. A date-stamped page or pages from the original correspondence is/are attached to establish timely receipt.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **March 22, 2010** | **Phil A. Goldman,**<br>**Acting District Director** | *Phil A. Goldman* |

(Del. Rev.12/98)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2010 SEP -7 PM 1: 35

Carlet D. Ward

(Name of Plaintiff or Plaintiffs)

v.

CIVIL ACTION No. ___10 - 759___

MBNA America (Bank of America)

(Name of Defendant or Defendants)

## *COMPLAINT UNDER TITLE VII*

## *OF THE CIVIL RIGHTS ACT OF 1964*

1.     This action is brought pursuant to *Title VII of the Civil Rights Act of 1964*, as amended, for **employment discrimination**. Jurisdiction exists by virtue of 42 U.S.C. $2000e-5. Equitable and other relief are also sought under 42 U.S.C. $2000e-5(g).

2.     Plaintiff resides at ___201 Voshells Mill Star Hill Road___
                                          (Street Address)
___Dover___     ___Kent County, DE___  ___19901___
(City)          (County)     (State)      (Zip Code)
___(302) 450-2881___ .
(Area Code) (Phone Number)

3.     Defendant resides at, or its business is located at ___c/o 9630 S.Tryon Street, Arrowood B___
                                                              (Street Address)
___Charlotte, NC   28273-6502   (county unknown)___ .
(City)          (County)     (State)      (Zip Code)

4.     The discriminatory conduct occurred in connection with plaintiff's employment at, or application to be employed at, defendant's ___MBNA America___ place of bussiness
                        (Defendant's Name)
located at ___Dover Site, Silver Lake Boulevard,___ _____
              (Street Address)
___Dover,___     ___Kent County, DE   19901___ .
(City)          (County)     (State)      (Zip Code)

5.     The alleged discriminatory acts occurred on __20__ , __March__ , __2006__ .
                                                          (Day)      (Month)      (Year)

14       September, 2005 and, on

6.     The alleged discriminatory practice    ⦿ is    ⦿ is not continuing.

7.     Plaintiff filed charges with the Department of Labor of the State of Delaware,

_____
(Agency)          (Street Address)          (City)

_____ , regarding
(County)          (State)          (Zip Code)

defendant's alleged discriminatory conduct on _____ , _____ , _____ .
                                                  (Day)        (Month)        (Year)

8.     Plaintiff filed charges with the Equal Employment opportunity Commission of the United States

regarding defendant's alleged discriminatory conduct on: __7__ , __August__ , __2006__ .
                                                            (Day)      (Month)       (Year)

9.     The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter

which was received by plaintiff on: __9__ , __June__ , __2010__ .
                                       (Day)      (Month)      (Year)

### *(NOTE:   ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)*

10.     The alleged discriminatory acts, in this suit, concern:

        A.    ⦿ Failure to employ plaintiff.

        B.    ⦿ Termination of plaintiff's employment.

        C.    ✗✗ Failure to promote plaintiff.

        D.    ✗✗ Other acts (please specify below)

 Denied an opportunity to post for jobs; turned down for an internal

grievance via human resources; subjected to racial harassment; unjustl

scrutizing and disciplined, denied the same amount of work given to
white employees in order to meet required productivity goals; denied

appropriate remedies for my complaints; and, I was not selected to
fill a position for which I interviewed for even though I was a
qualified candidate. etc.

 including discrepancies in statistical productivity reports

 in figures.

11.    Defendant's conduct is discriminatory with respect to the following:

    A.    ✖    Plaintiff's race

    B.    ✖    Plaintiff's color

    C.    ⬤    Plaintiff's sex

    D.    ⬤    Plaintiff's religion

    E.    ⬤    Plaintiff's national origin

12.    A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

13.    If relief is not granted, plaintiffs will be irreparably denied rights secured by Title VII of the 1964 CivilRights Act, as amended.

14.    Plaintiff's has no adequate remedy at law to redress the wrongs described above.

**_THEREFORE_, Plaintiff prays as follows: (Check appropriate letter(s))**

    A.    ✖    That all fees, cost or security attendant to this litigation be hereby waived.

    B.    ✖    That the Court appoint legal counsel.

    C.    ✖    That the Court grant such relief as may be appropriate, including injunctive orders, damages, cost and attorney's fees.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated:    September 6, 2010

Carlet D. Ward
(Signature of Plaintiff)

(Signature of additional Plaintiff)

Attachment:    Attorney's list of contacts

12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CARLET D. WARD                    )
                                  )
      Plaintiff                   )
                                  )
          v.                      )   Civ. No. 10-759-SLR
                                  )
MBNA America (Bank of America),   )
                                  )
      Defendant                   )
                                  )
                                  )

       The Plaintiff, Carlet D. Ward, worked as an Account Representative

on about October 20, 2003 until March 10, 2006 at MBNA America.   She

is Black and at the time of her employment was fifty-one years of age

and, she is a qualified individual with a disability.   In September,

2005, She filed an internal complaint with the Defendant alleging

discrimination against her on these bases.   She alleged that she

was denied the opportunity to post for various positions, denied

appropriate remedies for her complaints about not being able to post,

subjected to racial harassment, unjustly scrutinized and disciplined,

and, denied the same amount of work given to White employees in order

to meet required productivity goals and was then criticized for not

meeting those goals.

       On March 10, 2006, She applied for an available Bank Teller II

position, for which she was interviewed on March 20, 2006.   She was called

that very night and told that she was not selected because she had been

unable to immediately recall bank regulations from memory (when Respondent

could see from her resume that her last bank teller experience was

back in 2001.   She was told that the successful candidate had been able

to do so.   Accordingly, regulations are always posted at every workstation

13

and teller station in a bank.

Ms. Ward believes her non-selection was in retaliation for her prior complaint of discrimination, in willful violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, and the Americans With Disabilities Act of 1990.

Ms. Ward contends that since her employment with MBNA America which was terminated on March 10, 2006, she has been confronted with unemployment and/or becoming employed sporadically - 16 months with Macy's Department Store; twenty months of being unqualified to receive unemployment benefits from May, 2008 to April, 2010; 1 week employment with the City of Dover Appraisal's Office and, a temporary position with the U.S. Census Bureau as an Enumerator from April to August, 2010.

Plaintiff is charging discrimination and retaliation due to race and color and is seeking $350,000 in compensatory damages as well as any or all punitive damages.

_Carlet D. Ward_                                    3/2/11
Signed/Pro SE                                        Date

Attachments

14

Ward v. MBNA America (Bank of America)


<u>Attorney List of Contacts Made to Date</u>


1) Attorney Jeffrey Martin
   1508 Pennsylvania Avenue, Wilmington, DE
   (302) 777-4681
   Result:  via telephone - not available for new cases

2) Attorney Katherine R. Witherspoon
   Crossland & Associates
   4001 Kennett Pike, Ste. 316
   Greenville, DE  19807
   (302) 658-2100
   Result:  Face-to-face consultation; Declined to take the
   case because she did not believe I had a case.
   Fee Paid:  $100.00   (documents sent to her as requested)

3) The Wilson Firm
   (302) 286-1100
   Result:  No consultation; via phone declined; had no
   interest in taking the case.

4) Attorney Gary W. Aber
   Aber,Goldlust,Baker & Over
   702 N. King Street, Ste. 600, Wilmington, DE  19801
   (302) 472-4900
   Result: Consultation; Declined to take the case due to
   caseloads;
   Fee Paid:  $200.00 (Fee returned)

5) Attorney John M. LaRosa
   2 East 7th Street, Ste. 302, Wilmington, DE 19801
   (302) 888-1290
   Result:  Consultation; Declined to take the case
   Fee Paid:  $250.00

6) Attorney Martin D. Haverly (As referred by LaRosa)
   2 East 7th Street, Ste. 201, Wilmington, DE  19801
   (302) 654-2255
   Result:  Consultation; Declined to take case - w/o retainer
   Fee Paid:  $150.00  (wanted $10,000 for a retainer up front)

7) Attorney David G. Culley
   Tybout, Redfearn & Pell
   750 Shipyard Drive, Ste. 400, Wilmington, DE 19899
   (302) 658-6901
   Result:  Telephone consultation; Declined due to a
   conflict of interest check.

cont....

Ward v. MBNA America (Bank of America) - Page 2.

Attorney Contact List cont...

8)   Other Referrals to date fromAAttorney LaRosa:

    1)   Barbara H. Stratton
        Knepper & Stratton
        (302-652-7717
        Result:  Unable to reach via phone

    2)   Victor F. Battaglia
        Biggs & Battaglia
        (302) 655-7924
        Result:  Have not contacted due to lack of funds
        to pay for consultation fees

Date of Submission: _9/7/10_

Plaintiff's Signature _Carleth Ward_

/ 6

## Other Events

1:10-cv-00759-SLR Ward v. MBNA America

PaperDocuments

### U.S. District Court

### District of Delaware

### Notice of Electronic Filing

The following transaction was entered on 3/8/2011 at 12:30 PM EST and filed on 3/8/2011

**Case Name:**        Ward v. MBNA America
**Case Number:**      1:10-cv-00759-SLR
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**Exit USM 285 form for Defendant with copies of D.I. Nos. 2, 5 and 6 with Mag. Consent
form to U.S. Marshal for service. (fms)**


**1:10-cv-00759-SLR Notice has been electronically mailed to:**

**1:10-cv-00759-SLR Notice has been delivered by other means to:**

Carlet D. Ward
201 Voshells Mill Star Hill Road
Dover, DE 19901

17

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )         Civil Action No. 10-759-SLR
                                   )
MBNA AMERICA,                      )
                                   )
          Defendants.              )

**ORDER**

At Wilmington this _16th_ day of _September_ , 2010,

the Court having considered the application to proceed without prepayment of fees

under 28 U.S.C. § 1915;

     IT IS ORDERED that the application is **GRANTED**.

_____
United States District Judge

18

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                         *
                                        *
        Plaintiff,                      *
                                        *
        v.                              *    Civil Action No.: 10-759-SLR
                                        *
MBNA AMERICA (Bank of America),         *
                                        *
        Defendant.                      *

### DEFENDANT'S ANSWER TO COMPLAINT

Defendant MBNA Marketing Systems, Inc.[1] ("Defendant"), through undersigned counsel, hereby answers Plaintiff's *pro se* Complaint Under Title VII of the Civil Rights Act of 1964 ("Complaint") as follows:

1.    Defendant admits that Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), but denies that it discriminated against Plaintiff with respect to her employment and denies that Plaintiff is entitled to any relief against Defendant under any theory.  Defendant admits that this court has jurisdiction over this action.

2.    Defendant is without knowledge or information sufficient to admit or deny the allegation regarding Plaintiff's current residence and telephone number.

3.    Defendant admits that it has a banking center located at 9630 South Tyron Street, Charlotte, North Carolina, 28273, but denies the remaining allegations in Paragraph 3.

4.    Defendant denies the allegations of Paragraph 4.

5.    Defendant denies the allegations of Paragraph 5.

---

[1]    MBNA Marketing Systems, Inc., Ms. Ward's former employer, waived service in this matter.

6.      Defendant denies that it discriminated against Plaintiff and therefore denies the allegations of Paragraph 6.

7.      Plaintiff did not complete Paragraph 7.

8.      Defendant denies the allegations of Paragraph 8.

9.      Defendant is without knowledge or information sufficient to admit or deny the allegation regarding when Plaintiff received the Dismissal and Notice of Rights attached to the Complaint.

10.     Defendant admits that Paragraph 10 contains descriptions of acts that Plaintiff claims to be discriminatory, but Defendant denies the truth of those allegations.

11.     Defendant admits that Plaintiff's allegation in this action is that she was discriminated against on the basis of her race and color, but denies the truth of that allegation.

12.     Defendant admits that a copy of the Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") is attached to the Complaint, but denies the truth of the allegations contained in the Charge of Discrimination.

13.     Defendant denies that Plaintiff is entitled to any relief against Defendant under any theory and Defendant denies that Plaintiff will be irreparably denied rights secured by Title VII if relief is not granted.

14.     Paragraph 14 states a legal conclusion for which no response is required.  To the extent a response is required, Defendant denies the allegations of Paragraph 14.

Defendant responds to the unnumbered THEREFORE paragraph following Paragraph 14 by stating that it denies that Plaintiff is entitled to any relief against Defendant under any theory.

2

20

Defendant further responds to each numbered and unnumbered paragraph in Plaintiff's Complaint, and any attachment to the extent any response is required, by stating that any allegation not specifically admitted herein is denied.

### First Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims are not actionable because Plaintiff cannot establish a *prima facie* case of discrimination, retaliation, or harassment under any theory.

### Third Defense

Plaintiff's claims are not actionable because Defendant's conduct with respect to Plaintiff and the reasons therefore were in all cases legitimate, non-discriminatory, and non-retaliatory.

### Fourth Defense

Plaintiff's claims are not actionable because Plaintiff cannot show that any reason offered by Defendant for its conduct with respect to Plaintiff was in any way or in any case a pretext for purposeful, intentional and/or legally prohibited discrimination or retaliation.

### Fifth Defense

In the alternative, Plaintiff's claims are not actionable because Defendant would have taken the same actions regardless of Plaintiff's protected classifications.

### Sixth Defense

Plaintiff's claims are not actionable because Plaintiff did not engage in any protected activity within the meaning of Title VII, and to the extent Plaintiff made any complaints, she did not reasonably believe that she was reporting a violation of Title VII.

**Seventh Defense**

Plaintiff's claims are not actionable because any harassment she may have been subject to was not severe or pervasive.

**Eighth Defense**

Plaintiff's claims are not actionable because Plaintiff cannot establish that her race or color or any protected activity was a contributing factor to a materially adverse employment action and/or that there is any causal connection between her race or color or any protected activity and any materially adverse employment action.

**Ninth Defense**

Plaintiff's claims are not actionable because Defendant exercised reasonable care to prevent and correct promptly any harassing behavior and Plaintiff failed to complain about any alleged harassment and/or unreasonably failed to take advantage of the preventive and corrective opportunities provided by Defendant or to avoid harm otherwise.

**Tenth Defense**

Plaintiff's claims are not actionable because Plaintiff did not suffer any tangible employment action in connection with any alleged harassment.

**Eleventh Defense**

Defendant reserves the right to assert that the EEOC's failure to fulfill its statutory duties and/or its unreasonable delay in providing Defendant notice of the Charge of Discrimination unduly prejudiced Defendant's ability to defend itself in this matter.

**Twelfth Defense**

Defendant reserves the right to assert as a defense that some or all of Plaintiff's claims are time-barred.



### Thirteenth Defense

Defendant reserves the right to assert that some or all of Plaintiff's claims are not actionable because Plaintiff failed to exhaust her administrative remedies and/or failed to file a timely charge of discrimination or complaint with the appropriate administrative agency and/or because Plaintiff's claims were not investigated or considered by the administrative agency should the facts reveal this to be the case upon completion of discovery.

### Fourteenth Defense

Defendant reserves the right to assert that Plaintiff has failed to mitigate her damages, if any, should the facts reveal this to be the case upon completion of discovery.

### Fifteenth Defense

Defendant reserves the right to assert as a defense that some or all of Plaintiff's claims and/or her demands for relief are barred or otherwise not actionable because of the after acquired evidence doctrine.

### Sixteenth Defense

Defendant reserves the right to rely upon any other affirmative and/or further defense established throughout the course of discovery.

WHEREFORE, Defendant having answered Plaintiff's Complaint, respectfully requests that the Court dismiss all of Plaintiff's claims against Defendant with prejudice, enter judgment in favor of Defendant and against Plaintiff as to each of Plaintiff's claims, award Defendant its costs and reasonable attorneys' fees, and allow Defendant such other and further relief as the Court may deem just and proper in this case.

MORRIS JAMES LLP

_Allyson Britton DiRocco (4830) for_

James H. McMackin, III (#4284)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899
(302) 888-5849
*jmcmackin@morrisjames.com*
Attorneys for Defendant
MBNA Marketing Systems, Inc.

Dated:  January 25, 2011

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                    )
                                   )
              Plaintiff,           )
                                   )
        v.                         )        Civil Action No. 10-759 SLR
                                   )
MBNA AMERICA (Bank of America),    )
                                   )
              Defendant.           )

### CERTIFICATE OF ELECTRONIC SERVICE

I, James H. McMackin, III hereby certify that on January 25, 2012, I electronically

filed the attached **DEFENDANT'S ANSWER TO COMPLAINT** with the Clerk of Court using

CM/ECF, and that I have mailed by United States Postal Service the document to the following non-

registered participant:

> Carlet D. Ward
> 201 Voshells Mill Star Hill Road
> Dover, DE 19801

                                   MORRIS JAMES LLP

                                   James H. McMackin, III (#4284)
                                   500 Delaware Avenue, Suite 1500
                                   P.O. Box 2306
                                   Wilmington, DE 19899
                                   (302) 888-5849
                                   *jmcmackin@morrisjames.com*
                                   Attorneys for Defendant
                                   MBNA Marketing Systems, Inc.

Dated: January 25, 2011

3164688/1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                          *
                                         *
    Plaintiff,                          *
                                         *
    v.                                  *    Civil Action No.: 10-759-SLR
                                         *
MBNA AMERICA (Bank of America),          *
                                         *
    Defendant.                          *

## DEFENDANT'S AMENDED ANSWER TO COMPLAINT

Defendant FIA Card Services, N.A.[1] ("Defendant"), through undersigned counsel, hereby answers Plaintiff's *pro se* Complaint Under Title VII of the Civil Rights Act of 1964 ("Complaint") as follows:

1.      Defendant admits that Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), but denies that it discriminated against Plaintiff with respect to her employment and denies that Plaintiff is entitled to any relief against Defendant under any theory.  Defendant admits that this court has jurisdiction over this action.

2.      Defendant is without knowledge or information sufficient to admit or deny the allegation regarding Plaintiff's current residence and telephone number.

3.      Defendant admits that it has a banking center located at 9630 South Tyron Street, Charlotte, North Carolina, 28273, but denies the remaining allegations in Paragraph 3.

4.      Defendant denies the allegations of Paragraph 4.

5.      Defendant denies the allegations of Paragraph 5.

---

[1]      MBNA Marketing Systems Inc. is Ms. Ward's former employer and the entity that waived service in this matter.  MBNA Marketing Systems Inc. has since merged into Banc of America Card Servicing Corporation, which subsequently transferred all of its assets to FIA Card Services, N.A.

26

6.    Defendant denies that it discriminated against Plaintiff and therefore denies the allegations of Paragraph 6.

7.    Plaintiff did not complete Paragraph 7.

8.    Defendant denies the allegations of Paragraph 8.

9.    Defendant is without knowledge or information sufficient to admit or deny the allegation regarding when Plaintiff received the Dismissal and Notice of Rights attached to the Complaint.

10.    Defendant admits that Paragraph 10 contains descriptions of acts that Plaintiff claims to be discriminatory, but Defendant denies the truth of those allegations.

11.    Defendant admits that Plaintiff's allegation in this action is that she was discriminated against on the basis of her race and color, but denies the truth of that allegation.

12.    Defendant admits that a copy of the Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") is attached to the Complaint, but denies the truth of the allegations contained in the Charge of Discrimination.

13.    Defendant denies that Plaintiff is entitled to any relief against Defendant under any theory and Defendant denies that Plaintiff will be irreparably denied rights secured by Title VII if relief is not granted.

14.    Paragraph 14 states a legal conclusion for which no response is required.  To the extent a response is required, Defendant denies the allegations of Paragraph 14.

Defendant responds to the unnumbered THEREFORE paragraph following Paragraph 14 by stating that it denies that Plaintiff is entitled to any relief against Defendant under any theory.

Defendant further responds to each numbered and unnumbered paragraph in Plaintiff's Complaint, and any attachment to the extent any response is required, by stating that any allegation not specifically admitted herein is denied.

### First Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims are not actionable because Plaintiff cannot establish a *prima facie* case of discrimination, retaliation, or harassment under any theory.

### Third Defense

Plaintiff's claims are not actionable because Defendant's conduct with respect to Plaintiff and the reasons therefore were in all cases legitimate, non-discriminatory, and non-retaliatory.

### Fourth Defense

Plaintiff's claims are not actionable because Plaintiff cannot show that any reason offered by Defendant for its conduct with respect to Plaintiff was in any way or in any case a pretext for purposeful, intentional and/or legally prohibited discrimination or retaliation.

### Fifth Defense

In the alternative, Plaintiff's claims are not actionable because Defendant would have taken the same actions regardless of Plaintiff's protected classifications.

### Sixth Defense

Plaintiff's claims are not actionable because Plaintiff did not engage in any protected activity within the meaning of Title VII, and to the extent Plaintiff made any complaints, she did not reasonably believe that she was reporting a violation of Title VII.

28

### Seventh Defense

Plaintiff's claims are not actionable because any harassment she may have been subject to was not severe or pervasive.

### Eighth Defense

Plaintiff's claims are not actionable because Plaintiff cannot establish that her race or color or any protected activity was a contributing factor to a materially adverse employment action and/or that there is any causal connection between her race or color or any protected activity and any materially adverse employment action.

### Ninth Defense

Plaintiff's claims are not actionable because Defendant exercised reasonable care to prevent and correct promptly any harassing behavior and Plaintiff failed to complain about any alleged harassment and/or unreasonably failed to take advantage of the preventive and corrective opportunities provided by Defendant or to avoid harm otherwise.

### Tenth Defense

Plaintiff's claims are not actionable because Plaintiff did not suffer any tangible employment action in connection with any alleged harassment.

### Eleventh Defense

Defendant reserves the right to assert that the EEOC's failure to fulfill its statutory duties and/or its unreasonable delay in providing Defendant notice of the Charge of Discrimination unduly prejudiced Defendant's ability to defend itself in this matter.

### Twelfth Defense

Defendant reserves the right to assert as a defense that some or all of Plaintiff's claims are time-barred.

*29*

### Thirteenth Defense

Defendant reserves the right to assert that some or all of Plaintiff's claims are not actionable because Plaintiff failed to exhaust her administrative remedies and/or failed to file a timely charge of discrimination or complaint with the appropriate administrative agency and/or because Plaintiff's claims were not investigated or considered by the administrative agency should the facts reveal this to be the case upon completion of discovery.

### Fourteenth Defense

Defendant reserves the right to assert that Plaintiff has failed to mitigate her damages, if any, should the facts reveal this to be the case upon completion of discovery.

### Fifteenth Defense

Defendant reserves the right to assert as a defense that some or all of Plaintiff's claims and/or her demands for relief are barred or otherwise not actionable because of the after acquired evidence doctrine.

### Sixteenth Defense

Defendant reserves the right to rely upon any other affirmative and/or further defense established throughout the course of discovery.

WHEREFORE, Defendant having answered Plaintiff's Complaint, respectfully requests that the Court dismiss all of Plaintiff's claims against Defendant with prejudice, enter judgment in favor of Defendant and against Plaintiff as to each of Plaintiff's claims, award Defendant its costs and reasonable attorneys' fees, and allow Defendant such other and further relief as the Court may deem just and proper in this case.

30

MORRIS JAMES LLP

_____

James H. McMackin, III (#4284)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899
(302) 888-5849
*jmcmackin@morrisjames.com*
Attorneys for Defendant
FIA Card Services, N.A.

Dated:  January 31, 2011

31

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                    )
                                   )
            Plaintiff,             )
                                   )
    v.                             )          Civil Action No. 10-759 SLR
                                   )
MBNA AMERICA (Bank of America),    )
                                   )
            Defendant.             )

### CERTIFICATE OF ELECTRONIC SERVICE

I, James H. McMackin, III hereby certify that on January 31, 2012, I electronically

filed the attached **DEFENDANT'S AMENDED ANSWER TO COMPLAINT** with the Clerk of

Court using CM/ECF, and that I have mailed by United States Postal Service the document to the

following non-registered participant:

> Carlet D. Ward
> 201 Voshells Mill Star Hill Road
> Dover, DE 19801

                                        MORRIS JAMES LLP


                                        James H. McMackin, III (#4284)
                                        500 Delaware Avenue, Suite 1500
                                        P.O. Box 2306
                                        Wilmington, DE 19899
                                        (302) 888-5849
                                        *jmcmackin@morrisjames.com*
                                        Attorneys for Defendant
                                        FIA Card Services, N.A.

Dated:  January 31, 2011

3164688/1

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                          )
                                         )
    Plaintiff,                          )
                                         )
    v.                                  )   Civil Action No.: 10-759-SLR
                                         )
MBNA AMERICA (Bank of America),          )
                                         )
    Defendant.                          )

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant MBNA Marketing Systems, Inc. ("Defendant"),[1] hereby moves for dismissal of all claims alleged against it in Plaintiff's Complaint. In support of this Motion, Defendant relies on the accompanying Memorandum in Support of its Motion to Dismiss.

MORRIS JAMES LLP

*James H. McMackin by David H.*

James H. McMackin, III (I.D. #4284) *Williams*
500 Delaware Avenue, Suite 1500  *# 616*
P.O. Box 2306
Wilmington, DE 19899
(302) 888-5849
*jmcmackin@morrisjames.com*
Attorney for Defendant
MBNA Marketing Systems, Inc.

Dated:  May 9, 2011

---

[1] MBNA Marketing Systems, Inc., Ms. Ward's former employer, waived service in this matter.

33

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                          )
                                         )
      Plaintiff,                     )
                                         )
      v.                             )    Civil Action No.: 10-759-SLR
                                         )
MBNA AMERICA (Bank of America),          )
                                         )
      Defendant.                     )

## ORDER

Upon consideration of the Motion to Dismiss filed by Defendant MBNA Marketing Systems, Inc. ("Defendant"), the Memorandum in Support of, and all matters of record, it is by the Court, this _____ day of _____, 2011,

**ORDERED**, that Defendant's Motion to Dismiss is hereby GRANTED and that Plaintiff's Complaint is dismissed with prejudice.

_____

Judge Sue L. Robinson
United States District Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                    )
                                   )
                Plaintiff,         )
                                   )
        v.                         )          Civil Action No. 10-759 SLR
                                   )
MBNA AMERICA (Bank of America),    )
                                   )
                Defendant.         )

## CERTIFICATE OF ELECTRONIC SERVICE

I, James H. McMackin, III hereby certify that on May 9, 2011, I electronically filed

the attached **DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using CM/ECF,

and that I have mailed by United States Postal Service the document to the following non-registered

participant:

> Carlet D. Ward
> 201 Voshells Mill Star Hill Road
> Dover, DE 19801

MORRIS JAMES LLP

*James H. McMackin by David H Williams #616*

James H. McMackin, III (#4284)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-5849
*jmcmackin@morrisjames.com*
Attorneys for Defendant
MBNA Marketing Systems, Inc.

Dated: May 9, 2011

3131558/1

35

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                          )
                                         )
      Plaintiff,                       )
                                         )
v.                                       )     Civil Action No.: 10-759-SLR
                                         )
MBNA AMERICA (Bank of America),          )
                                         )
      Defendant.                       )

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant MBNA Marketing Systems, Inc. ("Defendant"),[1] through undersigned counsel, respectfully submits this Memorandum in Support of its Motion to Dismiss. For the reasons discussed below, Plaintiff's claims against Defendant should be dismissed in their entirety with prejudice.

## I.    STATEMENT OF THE CASE

On September 7, 2010, Plaintiff Carlet D. Ward ("Plaintiff") filed the instant Complaint against Defendant alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *(Complaint, Docket No. 2.)* The Complaint alleges that the alleged discriminatory acts occurred on September 14, 2005 and on March 20, 2006. *(Complaint ¶ 5.)* The Complaint states that Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 7, 2006.[2] *(Complaint ¶ 8.)* In the Charge, a copy of which is attached to the Complaint, Plaintiff

---

[1] MBNA Marketing Systems, Inc., Ms. Ward's former employer, waived service in this matter.

[2] The Charge is date stamped as having been received by the EEOC on April 3, 2007. The Charge Information Questionnaire, which is attached to the Complaint, is dated August 7, 2006.

36

alleges that on March 20, 2006 she was not selected for a position in retaliation for her having filed an internal complaint of discrimination in September 2005. *(Docket No. 2 at p. 12.)*

As will be discussed more fully below, Plaintiff's Complaint should be dismissed on the grounds that Plaintiff failed to exhaust her administrative remedies with respect to certain aspects of her claim and fails to state a claim with respect to her retaliation claim.

## II.    ARGUMENT

### A.    Legal Standards

Under Federal Rule of Civil Procedure 8(a), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face'". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." Id. at 1950.

### B.    Plaintiff's Claim Related to Conduct in September 2005 Should Be Dismissed As Time Barred.

Title VII requires that an aggrieved individual exhaust her administrative remedies prior to bringing a lawsuit. See 42 U.S.C. § 2000e-5(e)-(f). The exhaustion requirement is relevant to this case in two ways. The first is that the charge must be submitted to the EEOC within 300

2

days of the allegedly discriminatory conduct. See 42 U.S.C. § 2000e-5(e)(1); Lacy v. Nat'l R.R. Passenger Corp., 254 F. App'x 934, 936 (3d Cir. 2007).

Here, though the Charge indicates that it was filed in April 2007, Plaintiff alleges that it was filed on August 7, 2006. Using the August 7, 2006 date for purposes of this Motion, any conduct that occurred before October 11, 2005 is outside the 300-day period and any claim based upon that conduct is time barred. See Lacy, 254 F. App'x at 936 (holding that plaintiff was barred from challenging any incidents that took place prior to 300-days before her charge of discrimination was filed). Accordingly, any claim based upon conduct in September 2005 should be dismissed.

**C.    Plaintiff's Claim Related to Conduct in September 2005 and Any Claim Other Than for Retaliation Should Be Dismissed For Failure to Exhaust Her Administrative Remedies.**

The second aspect of the exhaustion requirement relevant to this case is that a plaintiff may bring a lawsuit related only to those claims that were asserted in the EEOC charge or arise out of the EEOC's investigation. See Cuffee v. Dover Whites Co., 334 F. Supp. 2d 565, 573-74 (D. Del. 2004) (concluding that the plaintiff had failed to exhaust her administrative remedies with respect to a claim of gender discrimination where the charge of discrimination alleged only race and age discrimination); Hill v. Super Fresh Food Markets, Inc., Civ. No. 05-452-JJF, 2006 U.S. Dist. LEXIS 11828, at *3-5 (D. Del. Mar. 22, 2006) (concluding that plaintiff had failed to exhaust his administrative remedies with respect to a claim of disability discrimination when his charge alleged only age discrimination); Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 413 (3d Cir. 2010) (affirming district court finding that plaintiff had failed to exhaust her administrative remedies for a hostile work environment claim when her charge only alleged

3

38

gender discrimination arising only out of her former employer's decision to terminate her employment).

In this case, the sole allegation in Plaintiff's Charge is that her non-selection for a position on March 20, 2006 was retaliatory.    Accordingly, Plaintiff did not exhaust her administrative remedies with respect to any claim other than retaliation based upon the March 20, 2006 non-selection.  Accordingly, any other claim that Plaintiff may be seeking to state in this Complaint should be dismissed.

**D.    Plaintiff's Retaliation Claim Should Be Dismissed For Failure To State A Claim.**

The anti-retaliation provision of Title VII prohibits any employer from discriminating against an employee because he or she has opposed any practice that violates Title VII.  See 42 U.S.C. § 2000e-3(a).  In order to sustain a retaliation claim, a plaintiff must establish that the materially adverse employment action at issue was taken because the plaintiff engaged in protected activity; that is, that the protected activity had a determinative effect on the employment decision.  See Woodson v. Scott Paper Co., 109 F.3d 913, 935 (3d Cir. 1997) (holding that the 42 U.S.C. § 2000e-2(m) motivating factor standard does not apply to retaliation cases but rather the improper motive must have had a determinative effect on the decision at issue); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 n.8 (3d Cir. 2007) (explaining that in order to show that she was terminated because of her complaints about the firing of her coworkers, the plaintiff had to prove that her complaints were a *determinative* factor of the employment decision, meaning that she would not have been terminated *but for* her protected activity); see also, e.g., Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006) (identifying the elements of a *prima facie* case of retaliation as being that: (1) the plaintiff engaged in activity protected by Title VII; (2) the plaintiff suffered a materially adverse

4

39

employment action; and (3) there was a causal connection between her participation in the protected activity and the adverse action).

Thus, in this case, Plaintiff must be able to establish that the non-selection decision was made because of her internal complaint of discrimination made six months earlier. However, the allegations of Plaintiff's Charge reveal that she cannot possibly make such a showing. Specifically, Plaintiff alleges in her Charge that:

> On March 10, 2006, I applied for an available Bank Teller II position, for which I was interviewed on March 20, 2006. I was called that very night and told that I was not selected because I had been unable to immediately recall bank regulations from memory (when Respondent could see from my resume that my last bank teller experience was in 2001). I was told that the successful candidate had been able to do so. (The regulations are always prominently posted at every teller station in a bank.)

As explained by the EEOC in a letter to Plaintiff dated June 7, 2010 that is also attached to Plaintiff's Complaint, given the above allegations, it is impossible for Plaintiff to establish that had she not complained about discrimination in September 2005 she would have been awarded the position in March 2006. *(Docket No. 2 at pp. 6-7.)* As Plaintiff's Complaint contains no additional facts that could allow the court to draw the reasonable inference that the non-selection decision was made because of Plaintiff's internal complaint of discrimination made six months earlier, the allegations of Plaintiff's Complaint fail to state a claim of retaliation. Accordingly, Plaintiff's retaliation claim should be dismissed.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety and with prejudice.

40

MORRIS JAMES LLP

*James H. McMackin by David H. Williams #616*

James H. McMackin, III (I.D. #4284)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-5849
*jmcmackin@morrisjames.com*
Attorney for Defendant
MBNA Marketing Systems, Inc.

Dated: May 9, 2011

6

41

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                            )
                                           )
            Plaintiff,                     )
                                           )
    v.                                     )    Civil Action No. 10-759 SLR
                                           )
MBNA AMERICA (Bank of America),            )
                                           )
            Defendant.                     )

### CERTIFICATE OF ELECTRONIC SERVICE

I, James H. McMackin, III hereby certify that on May 9, 2011, I electronically filed

the attached **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

with the Clerk of Court using CM/ECF, and that I have mailed by United States Postal Service the

document to the following non-registered participant:

> Carlet D. Ward
> 201 Voshells Mill Star Hill Road
> Dover, DE 19801

MORRIS JAMES LLP

James H. McMackin by David H.
Williams
#616

James H. McMackin, III (#4284)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-5849
*jmcmackin@morrisjames.com*
Attorneys for Defendant
MBNA Marketing Systems, Inc.

Dated: May 9, 2011

3164688/1

42

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CARLET D. WARD )
)
    Plaintiff )
)
    v. )    Civil Action No.:  10-759-SLR
)
MBNA AMERICA (Bank of America) )
)
    Defendant )
)

## PLAINTIFF'S MOTION TO REJECT/DENY DEFENDANT'S

## MOTION TO DISMISS

Pursuant to Title VII of the Civil Rights Act of 1964, Title VII
of the Civil Rights Rights Act of 1991 and, 42 U.S.C. § 1981, the
Plaintiff hereby order the Defendant's motion to dismiss be rejected.
In support of this order to reject, the attached supporting
memorandum is being submitted as argument.

CARLET D. WARD

*Carlet D. Ward*

Carlet D. Ward, Pro Se
201 Voshells Mill Road
Dover, DE  19901
(302) 450-2881

Dated:  May 16, 2011

43

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CARLET D. WARD                          )
                                        )
        Plaintiff                       )
                                        )
        v.                              )    Civil Action No.: 10-759-SLR
                                        )
MBNA AMERICA (Bank of America)          )
                                        )
        Defendant                       )
                                        )

PLAINTIFF'S MOTION TO REJECT/DENY DEFENDANT'S
MOTION TO DISMISS

MEMORANDUM IN SUPPORT OF PLAINTIFF's  MOTION

In answer to Defendant's motion to dismiss, Plaintiff offers the following arguments and facts:

I.  Now comes the Defendant, along with his submission of Roundtable discussion and conclusions in this case.  The Defendants in this case grossly erred in its pretext that the plaintiff did not exhaust her administrative remedies prior to bringing suit.  Plaintif has already well-documented the chain of command for which she took to seek an administrative remedy that included a series of internal complaints involving her manager, center director, site personnel and, then with Corporate human resources.  These series of internal complaints went from May, 2004 through September 14, 2005.  In March, 2006, the worksite was phased out and shut down and, jobs were lost.   The March 20, 2006 date for which defendant eludes to was the date for which I applied for an in-house job position, interviewed for and was turned down.  It came after our site was closed and, we were no longer employed with the company.  There was no available administrative remedies to seek anymore.  It was exhausted on March 20, 2006.

II.  Under Title VII, it is a known fact that because there are no administrative remedies, there is little hope of stopping

discrimination without going to court.  Plaintiff has shown that discriminating purpose was a "motivating" factor in this complaint.

The Plaintiff  was denied numerous  opportunities in employment to post and apply for jobs she was qualified for.  When she complained, she was denied any or all administrative remedies as required by company policy as an equal opportunity employer.  PLaintiff went through the company's internal complaint process.  She  then became on the receiving end of a series of disparate treatment in her work because of her complaints; she was terminated or, rather, permanently laid-off when their worksite was phased out and shut down on or about March 12, 2006; and, she was denied employment as a bank teller on March 20, 2006 with no administrative remedy available.

III.  Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 prohibits discrimination and intentional discrimination in the form of retaliation.  Title VII also prohibits unlawful employment practice when it constitutes disparate treatment - a cause of action as shown by the  Plaintiff in this case.  Actual example presented itself when the plaintiff was subjected to racial epithets used by her manager; harsh disciplinary acts; and, reduced work productivity conditions on the job. Plaintiff contends in this case that her employer "departed" from its standard operating procedures to discriminate from its usual practices for posting and applying for job positions for which at the time an applied criteria was used when she tried to post for and apply for these jobs available within the company.  This departure created an unlawful pattern and practice when the standard operating procedures was abandoned.  The adverse effect?  Simply put, this case cannot be dismissed because:

1.  The plaintiff belongs to a racial minority class.  She is Black.

2.  She sought to post and apply for several job openings she was qualified for including a "manager-in-training" program.

45

3.  Despite her qualifications, she was denied the opportunity to post and apply for these jobs; and

4.  On her last attempt to stay gainfully employed with the company, she was once again rejected and wasn't hired for a position she both applied and interviewed for.

Thereby, the plaintiff contends in defense of her claim that

A.  She has already established a prima facie case of discrimination - proving that the above elements adversely effected her ability to get promoted and hired which then created a pattern of retaliation after she sought administrative remedies from her employer and human resource staff;

B.  Departures from normal procedural sequence also might afford evidence that improper purposes played a supporting role;

C.  The question of "Time-barred"? The Supreme Court has held that only one Title VII plaintiff need comply with the time requirements as is not the case in class action suits. And, that a person can file a charge of discrimination after the 180-day time period has elapsed if the discriminatory practice is one that is deemed to be "continuing". The plaintiff has been unable to retain full-time permanent employment and without undergoing on-the-job harassment from her former employer - a cause of action which has risen and that she continues to remain injured by her former employer's application.

Plaintiff has met all of the time requirements to file as required under Title VII including timeliness filings with EEOC. Thereby, plaintiff rejects the Defendant's motion to dismiss; and

D.  The cause of action as outlined provides for the recovery of compensatory and punitive damages and, for a jury trial, if so desired under the statutes of Title VII and the passage of the Civil Rights Act of 1991. The Plaintiff, as an injured party in this complaint, is still entitled to relief from the courts.

46

CARLET D. WARD, PRO SE

_Carlet D. Ward_
Carlet D. Ward, Pro Se
201 Voshells Mill Road
Dover, DE  19901
(302) 450-2881

Dated:  May 16, 2011

47

## The Law Firm of Ronald G. Poliquin. P.A.
### Ronald G. Poliquin, Esquire

375 W. North Street
Dover, Delaware 19904
ron@ronpoliquin.com

Phone: 1-800-811-5182
Fax: 1-800-604-4694

May 3, 2012

Carlet Ward
201 Voshells Mill Rd
Dover, DE 19901

   Re: Consultation on May 3, 2012

Dear Ms. Ward,

   Thank you for meeting with me with me on May, 3, 2012 for a consultation. I greatly appreciate the confidence you have expressed in my firm, but I am not in a position to represent you on this particular matter.

   I would also like to emphasize that in declining to represent you, the firm is not expressing an opinion on the merits of your case. I neither had an opportunity to investigate the facts in this matter nor to research the applicable law.

   In the future should you require legal assistance regarding some other matter, I hope you will contact me.

      Very truly yours,

      Ronald G. Poliquin

48

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                          )
                                         )
                Plaintiff,               )
                                         )
        v.                               ) Civ. No. 10-759-SLR
                                         )
MBNA AMERICA (Bank of America),          )
                                         )
                Defendant.               )


## ORDER RECOGNIZING REPRESENTATION

The Court recognizes that Andrew J. Rennick, Esquire, has agreed to represent the plaintiff, Carlet D. Ward, as counsel of record in the above captioned case. Counsel's representation shall remain in effect until the final determination of this case unless, prior thereto, this order is amended or revoked by further order of the Court.


DATE: _____5/29/12_____


_____
United States District Judge


#57

49

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARLET D. WARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-759-SLR |
| | ) |
| MBNA AMERICA (Bank of America), | ) |
| | ) |
| Defendant. | ) |

### ORDER RECOGNIZING REPRESENTATION

The Court recognizes that J. Jackson Shrum, Esquire, has agreed to represent the plaintiff, Carlet D. Ward, as counsel of record in the above captioned case. Counsel's representation shall remain in effect until the final determination of this case unless, prior thereto, this order is amended or revoked by further order of the Court.

DATE: _____8/1/12_____

_____
United States District Judge

#58

$5D$

**Subject:** RE: Carlet Ward – Next Steps

**From:** Shrum, J. Jackson (jjshrum@archerlaw.com)

**To:** carletward@yahoo.com;

**Date:** Thursday, January 3, 2013 10:49 AM

Carlet,

Please bring all of your documents with you to my office next Tuesday, Jan. 8.  What time can you arrive?  We will discuss the offer of settlement at that time.  Thank you.

Sincerely,

Jack

**"J" Jackson Shrum, Esq.**

300 Delaware Avenue
Suite 1370
Wilmington, DE 19801
Direct Dial: 302-356-6632
Fax: 302-777-4352
jjshrum@archerlaw.com
www.archerlaw.com

**Archer&Greiner** P.C.
ATTORNEYS AT LAW

**From:** carlet ward [mailto:carletward@yahoo.com]
**Sent:** Thursday, January 03, 2013 10:47 AM
**To:** Shrum, J. Jackson
**Subject:** Re: Carlet Ward - Next Steps

Hi, Jack -

I am totally insulted by the opposing attorneys' offer of $10,000.  You got to be kidding.  This is

big leagues and not a "child's play" discrimination/retaliation civil suit and case.  Please

51

advise the "boys" that it's time to graduate to the big leagues and prepare for either a "real"

offer or for "mediation".

Re: documents/files - it's still available but its just going to reaffirmate what was stated

in the deposition.  I am strapped for cash - I can only come to Wilmington when the money

is there.  Tuesday, January 8th is the earliest I can come.  Please be sure to relay my message

to Attorney McMacklin and company.  Thanks.  Please let me know!


**From:** "Shrum, J. Jackson" <jjshrum@archerlaw.com>
**To:** "'carletward@yahoo.com'" <carletward@yahoo.com>
**Cc:** "Carey, Cheryl A." <ccarey@archerlaw.com>
**Sent:** Friday, December 28, 2012 3:46 PM
**Subject:** FW: Carlet Ward - Next Steps


Carlet,

Please see the note and message from opposing counsel below and let me know what you think.
Thank you, and I hope you have a very Happy New Year!

Sincerely,
Jack


**"J" Jackson Shrum, Esq.**

300 Delaware Avenue
Suite 1370
Wilmington, DE 19801
Direct Dial: 302-356-6632
Fax: 302-777-4352
jjshrum@archerlaw.com
www.archerlaw.com

# Archer&Greiner p.c.
ATTORNEYS AT LAW

**From:** Marcuss, Elena D. [mailto:emarcuss@mcguirewoods.com]
**Sent:** Friday, December 28, 2012 3:39 PM
**To:** Shrum, J. Jackson
**Cc:** McMackin III, James H. (JMcMackin@morrisjames.com)
**Subject:** RE: Carlet Ward - Next Steps

Jack,

Happy New Year to you as well.

Obviously, we are interested both in the production of the additional documents and the audio recording
that Ms. Ward identified during her deposition (as well as any other responsive documents that exist), the
latter of which she indicated had already been provided to you, and with setting a date for the continuation

52

of Ms. Ward's deposition.

The alternative would be to resolve this matter now. To that end, the Bank is willing to offer Ms. Ward a total of $10,000 in exchange for a confidential general release with a no-rehire provision. Please understand that this is not an invitation for a counter-demand, that this offer will expire as soon as we have to expend any further time on discovery in this matter, and that this offer is not a floor from which the Bank will start negotiating at the mediation in February.

Jim and I are available should you want to talk about this further. We look forward to a response.

Elena

Elena D. Marcuss
McGuireWoods LLP
7 Saint Paul Street
Suite 1000
Baltimore, MD 21202-1671
410.659.4454 (Direct Line)
410.659.4547 (Direct FAX)
emarcuss@mcguirewoods.com
http://www.mcguirewoods.com
*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

---

**From:** Shrum, J. Jackson [mailto:jjshrum@archerlaw.com]
**Sent:** Friday, December 28, 2012 2:33 PM
**To:** Marcuss, Elena D.
**Cc:** McMackin III, James H. (JMcMackin@morrisjames.com); Carey, Cheryl A.
**Subject:** RE: Carlet Ward - Next Steps

Elena,

Apologies for the delay. I have yet to receive the supplemental documents we discussed at Ms. Ward's deposition but I will forward them to you as soon as possible. I hope you have a very happy new year.

Sincerely,
Jack

**"J" Jackson Shrum, Esq.**

300 Delaware Avenue
Suite 1370
Wilmington, DE 19801
Direct Dial: 302-356-6632
Fax: 302-777-4352
jjshrum@archerlaw.com
www.archerlaw.com

## Archer&Greiner p.c.
ATTORNEYS AT LAW

**From:** Marcuss, Elena D. [mailto:emarcuss@mcguirewoods.com]
**Sent:** Thursday, December 27, 2012 4:12 PM
**To:** Shrum, J. Jackson
**Cc:** McMackin III, James H. (JMcMackin@morrisjames.com)

53

**Subject:** Carlet Ward - Next Steps

Jack,

Please let us know if you have a few minutes tomorrow or next week to talk about next steps in this matter.

Thanks and Happy New Year.

Elena

Elena D. Marcuss
McGuireWoods LLP
7 Saint Paul Street
Suite 1000
Baltimore, MD 21202-1671
410.659.4454 (Direct Line)
410.659.4547 (Direct FAX)
emarcuss@mcguirewoods.com
http://www.mcguirewoods.com
*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

IRS Circular 230 Disclaimer: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) voiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

IRS Circular 230 Disclaimer: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) voiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

54

TO: Judge Sue L. Robinson
    U.S. District Court

FROM: Carld D. WARD, Plaintiff
      201 Voshells Mill Road
      Dover, DE 19501

DATE: JANuary 28, 2013

Re:  CARLet D. WALD v. BANK of America
     C.A. No. 10-759-SLR

As the Plaintiff in this CASE as filed in forma
pauperis status — I certainly understand and I am
being very sensitive to the fact that I am at the
mercy of the U.S. District Court in this CASE —
having no other options as to who or what kind
of legal representation I am privileged to as
appointed by the judicial panel. And, I really
do appreciate Attorney JACK Shrum's willingness in
undertaking my civil cause and case. Their efforts
is noted and appreciated.

I wanted to provide the court with a written update
on the progress that is being made between myself
and attorney Shrum and, between the opposing sides
Attorney JAmes McMackin, et al. I want the courts
to know that I have been very cooperative with
both sides, in particular, Attorney Shrum by providing
the requested documents and evidence relative to this
case and, that I even cooperated when I was
subjected to being deposed by the defendants, BANK
of America on this past December 18, 2012 for a
deposition for which I objected to.

There are a few minor issues that I thought I'd bring to your attention relative to this case as well as for your information as a forma pauperis plaintiff:

I have been getting the gut feeling that both sides are not really taking this case very serious as you can see by the attached email communication beginning in December through January 3rd. I would appreciate it very much if the courts would instruct as well as remind both legal representations that this is a civil suit in the U.S. District Court and not with the Human Relations Commission where they are accustom to awarding civil damages in the amounts of $10,000 or less to their complainants and, that both sides need to do an attitude adjustment about me and my situation - economically and racially and to stop using the "blaming the victim" syndrome in this case as a means to diss me or the validity of this civil complaint.

Also, I had provided my attorney with a microcassette tape recording of a telephone conference call I had with the Human Resources Dept while I was pursuing a grievance w/the company. Attorney Shrum had it digitalized but unfortunately, the audio was tampered with and it made me sound like someone else, awful and unintelligible. If it is going to be used I would request that Attorney Shrum have it fixed before presenting it before a civil trial.

I also became concerned that I was asked to provide documents as evidence to the opposing side without them going through a

subpoena process. I didn't feel that we needed to provide the defense with every detailed piece of evidence or ammunition we would be using voluntarily — especially before the negotiation process or even trial.

At the last meeting I had with attorney Shrum, he stated that "I was begging for money" from Bank of America and, I said that I was not begging for money — that I was not that hard up or desperate for a child's play of $10,000 settlement offer and, that I didn't want or need him to botch or screw up this case — my retaliation case against MBNA America Aka Bank of America. My financial situation has not changed. I am still on public assistance receiving both food stamps and medicaid and, that I have been without electricity since June 8th shortly after or before I was appointed another Attorney for this case.

And, finally — About a month after my deposition, the Chandra Levy murder case re-surfaced again. As you can recall, I was one of the last witnesses to see Chandra Levy alive and had been rejected, denied and ommitted from testifying at her murder trial. I didn't or, rather, I don't want anything to interfere with the continuation of this case, or, any distractions or, conflicts of interest. And, just for the record, I have been cooperating fully with Attorney Shrum in spite of his apathetic approach to this case and, even though there is nothing in writing to support that he has been

51 



retained as my attorney. I HAVE been able
to Keep an open-mind About where this case
needs to be right now - I have put my trust
in the courts in their selection of Attorneys for
me even though I strongly feel that
attorney Shrum misstepped on a golden
opportunity to have this case already settled
and over and done with a Settlement
greater than or, equal to the $300,000 in
damages as filed. So, what's next?
apparently mediation and/or civil trial
That's it for now.

   Sincerely,

   Carlet D. Ward
   (302) 264-1895

   Attachment: Email communication-



# Archer&Greiner P.C.

ATTORNEYS AT LAW

"J" Jackson Shrum
*Member of Delaware, New Jersey and
Pennsylvania Bar*
jjshrum@archerlaw.com
302-356-6632 Direct

300 Delaware Avenue
Suite 1370
Wilmington, DE 19801
302-777-4350 Main
302-777-4352 Fax
**www.archerlaw.com**

February 25, 2013

Carlet D. Ward
201 Voshells Mill Star Hill Road
Dover, DE 19901

Re:   Carlet D. Ward v. MBNA America / Civil Action NO: 10-759-SLR

Dear Carlet:

I previously sent you a draft Engagement Letter you requested. Please review it and sign where indicated. Should you have any questions about it, please let me know as soon as possible. Otherwise, please return the signed Engagement Letter to my office as soon as possible.

Also, the Defendants' counsel has requested to continue your deposition for **Tuesday, March 5** at the same location as last time. I remind you again that I also received a request from counsel to the Defendant for additional documents that you identified were in your possession during your deposition. These documents include:

- Calendars, journals, itinerary, daily journals and daily planners in which you wrote notes about events relevant to your claims in this case.

- Wage records, pay stubs, W-2's and 1099's related to amounts you have earned since your employment with Bank of America ended.

- Job search records showing where you applied for jobs between 2006 and 2012.

- Any and all documents responsive to Defendant's discovery requests that have not already been produced.

Please provide these documents immediately. If any documents are subject to a privilege, we will discuss and protect and/or redact those portions of the documents accordingly.

---

Carlet D. Ward
February 25, 2013
Page 2

If you do not have any of the categories of documents mentioned above, I will need to know this promptly.

Please contact me immediately if you have any questions about this. Thank you.

Very truly yours,

ARCHER & GREINER
A Professional Corporation

BY: _____
"J" Jackson Shrum

9453930v1

60

201 Voshells Mill Road
Dover, DE 19901

February 26, 2013

J. Jackson Shrum
Archer & Greiner, P.C., Attorneys at Law
300 Delaware Avenue
Suite 1370
Wilmington, DE 19801

**Re: Carlet D. Ward v. Bank of America**
**Civil Action No: 10-759-SLR**

Dear Attorney Shrum,

I am in receipt of Archer & Genier's lawyer/client contract and agreement as submitted for my approval and signature that would legitimize your legal relationship with me as your client. Unfortunately, as you know, when I first filed my civil action complaint in U.S. District Court, it was filed as a "forma pauperis" case because of my economical and financial situation and condition: being unemployed and receiving public assistance (food stamps and Medicaid). I am still partially unemployed and still on public assistance.

Also, I am in no financial or economic position to sign on to a contractual agreement such as the one your firm has prepared and submitted to me nor am I in any financial or economical position to be a future subject of a "wage garnishment" action for nonpayment of legal services, fees and expenses if not paid when due according to the terms as outlined in your contract. I can only agree to being represented by legal counsel on a "contingency" basis as well as paying a "retainer's fee" for as little as possible with the option to making weekly or monthly small payments until the retainer's fee has been paid in full. Need I please remind counsel that I only gross $108 per week totally $432 per month as a part-time temporary employee working only 12 hours per week at $9.00 per hour.

So, because of my current hardship status, you are at liberty to withdraw from representing me as legal counsel due to the circumstances as described above. Therefore I am returning your contract unsigned. I appreciated the effort and time you have already spent on this case.

I wish you all the best for whatever you do or, decide.

Sincerely,
Carlet D Ward
Carlet D. Ward

Attachment: Unsigned Archer & Grenier Client/Lawyer Contract
Cc: U.S. District Court

61

A&G   ARCHER & GREINER, P.C.
      ATTORNEYS AT LAW

**"J" JACKSON SHRUM**
*Member of Delaware, New Jersey and*
*Pennsylvania Bar*

300 DELAWARE AVENUE
SUITE 1370
WILMINGTON, DE 19801
302-777-4350
FAX 302-777-4352

www.archerlaw.com

February 20, 2013

**Email Address:**
jjshrum@archerlaw.com

**Direct Dial:**
(302) 356-6632

Carlet D. Ward
201 Voshells Mill Star Hill Road
Dover, DE 19901

     RE:    **Carlet D. Ward v. Bank Of America**
            **Civil Action No: 10-759-SLR**

Dear Carlet:

This letter will confirm that you have engaged Archer & Greiner, P.C. to represent you in the above-referenced matter as a case referred to us through the Federal Civil Referral Panel on a pro bono basis.

As required by the Delaware Rules of Professional Conduct, this letter will set forth the terms upon which Archer & Greiner has agreed to represent you.

1.    Scope of Representation. Our assignment is to represent you regarding your litigation matter, and such other matters as you should direct from time to time. Unless otherwise agreed in writing, the financial terms of any other legal work we perform will be as set forth in this letter.

2.    Attorney Time Charges. We will bill you for the services of our attorneys and certain non-attorney legal personnel based on the usual hourly rates charged for the time of those individuals. Our current range of hourly rates is $60 to $230 for legal assistants, $190 to $400 for associate attorneys and $250 to $605 for partners. These rates are adjusted from time-to-time, usually at the beginning of our fiscal year on October 1.

3.    Staffing Time Charges. My current billing rate for your matter will be **$275** per hour. I will supervise my other assigned attorneys who may assist in our representation of you as necessary. To the extent other attorneys or other legal professionals assist in our representation of you, you will be billed at their usual hourly rates, subject to the terms of our representation of

---

| *PRINCETON OFFICE* | *FLEMINGTON OFFICE* | *PHILADELPHIA OFFICE* | *WILMINGTON OFFICE* | *NEW YORK OFFICE* |
|---|---|---|---|---|
| 700 Alexander Park | Plaza One | One South Broad Street | 300 Delaware Avenue | 2 Penn Plaza |
| Suite 102 | 1 State Route 12, Suite 201 | Suite 1600 | Suite 1370 | Suite 1500 |
| Princeton, NJ 08540 | Flemington, NJ 08822-1722 | Philadelphia, PA 19107 | Wilmington, DE 19801 | New York, NY 08540 |
| P 609-580-3700 | P 908-788-9700 | P 215-963-3300 | P 302-777-4350 | P 212-292-4988 |
| F 609-580-005 | F 908-788-7854 | F 215-963-9999 | F 302-777-4352 | F 212-629-4568 |

you in this matter on a pro bono basis, subject to any costs incurred by our firm for expert witness fees and expenses, and other costs of litigation that will be reduced from an award, judgment or settlement of any kind, if any, at the conclusion of this matter. In other words, you will not be billed for any attorney time spent working on this matter, but you agree to pay for any costs incurred by the law firm or the attorneys in connection with the representation of your matter should you receive any monies on account of a settlement, award or judgment at the conclusion of this matter.

4.    Disbursements. In addition to charges for the time of our attorneys and other legal personnel, you will be responsible to pay all out-of-pocket expenses incurred during our representation, including computerized legal research fees, experts' fees, postal and express mail charges, travel expenses, court filing fees, court reporters' fees and copying expenses. These costs will be included in our bills. When we foresee that a particular cost may be substantial, we may request either that you pay that expense directly or that you fund it in advance. We will attempt to provide you with as much advance notice as possible of any such situations.

5.    Billing Statements. We will forward our statements for Time Charges and Disbursements on a monthly basis unless there has been only minimal activity in a particular month. Our statements will detail our charges by date and will describe the tasks performed and the amount of time devoted to each task. Our invoices are due and payable within thirty (30) days of the date of each invoice. You will be charged interest at a rate of 1% per month, or an annual rate of 12%.

If you have concerns about any of the charges contained in our bills, we request that you bring those concerns to my attention promptly, and in no circumstances more than 30 days after the date of any bill. If we do not hear from you within that time frame we will assume that you are comfortable with and do not intend to question any of our charges.

If any disputes arise relating to our bills and we are required to pursue litigation or other collection efforts, you will be responsible to pay the reasonable fees we incur in that regard.

6.    Security Retainer. A security retainer is **not** requested as a condition of our representation.

7.    Responsibility of Client. We cannot represent you effectively without your full and timely cooperation. You agree to provide all information relevant to the issues involved in this matter and to make yourself reasonably available to assist in our representation.

8.    No Guarantee of Outcome of Cost. We cannot predict either what the total bill for legal services will be or the outcome of litigation because costs and results are based upon many factors over which we will not have full control. Although we pride ourselves on performing efficiently and cost-effectively, and will provide conscientious, competent and diligent services, litigation is very difficult to predict and can be both time-consuming and expensive. Any cost estimates or billing projections that we provide are only estimates and are not guarantees. We will communicate with you throughout the course of our representation so

63

that you are aware of how we are progressing and can be involved in decisions which may have an impact on both cost and outcome.

9.    Termination of Engagement. Each of us may terminate this engagement upon written notice to the other party. In the event that our engagement is terminated and there are outstanding fees or expenses due to us, we will retain a lien on your files. In the event that our engagement is terminated and there is a balance remaining in the attorney trust account after deduction for any outstanding fees, costs and expenses due, said balance will be returned at the following billing cycle, or within thirty (30) days after termination of the engagement, whichever is later. If a dispute arises concerning an outstanding balance, the amount in dispute will be held in the attorney account pending resolution of the dispute.

10.    Complete Agreement. This engagement letter sets forth the entire agreement between Archer & Greiner and you concerning the matters it addresses. There are no oral agreements concerning any of the issues discussed in this letter. The terms of this agreement can only be modified in a written document signed by both of us.

11.    Confidentiality. You should be careful to maintain the confidentiality of all communications with this firm, such as this letter. Sharing such documents (e.g., providing copies to others or telling others about the substance of our communications) may be deemed a waiver of the attorney-client privilege, so please be very careful in this regard. Our firm is capable of sending and receiving messages and documents via unencrypted e-mail. Although we find that e-mail can have significant advantages over the other forms of communication in terms of convenience and speed, unencrypted e-mail transmissions are not completely secure and could potentially be intercepted by third parties. It is our general practice to utilize e-mail, and we will assume that you approve of such unless you advise us in writing that you do not.

Please confirm your agreement to the terms of this letter-agreement by signing the copy that I have enclosed and returning it to me. Kindly contact me if you have any questions about any of the terms of our representation.

We look forward to working with you toward a successful result.

Very truly yours,

Jack Shrum

3

64

I have read and agree to the terms of representation set forth above.

_____                    Dated: _____
SIGNATURE

_____
PRINTED NAME

Telephone Number: _____

9345251v1

4

**Archer&Greiner** P.C.

ATTORNEYS AT LAW

**"J" Jackson Shrum**
*Member of Delaware, New Jersey and*
*Pennsylvania Bar*
jjshrum@archerlaw.com
302-356-6632 Direct

300 Delaware Avenue
Suite 1370
Wilmington, DE 19801
302-777-4350 Main
302-777-4352 Fax
**www.archerlaw.com**

March 8, 2013

Carlet D. Ward
201 Voshells Mill Star Hill Road
Dover, DE 19901

Re: Carlet D. Ward v. MBNA America / Civil Action NO: 10-759-SLR

Dear Carlet:

I am in receipt of your letter returning the draft engagement agreement and request to remove me as your attorney in the above-referenced matter. Just so that we are clear, the engagement agreement would not require you to pay anything to my firm for attorney time spent on your case. The only amounts requested were any hard costs to the firm, including expert witness fees, and only then if you prevailed after a trial or settlement of this matter.

Nonetheless, it is clear that communications and other discovery-related issues between us have deteriorated significantly during the past months. I am enclosing for your records a copy of the Motion to Withdraw as your attorney in this matter. This motion will be filed today.

Please be aware that I have been in substantial discussions with a proposed damages expert by the name of Bob Pare. His contact information follows:

Robert J. Paré, MS, CRC, LRC, CDMS
Consultative Review & Rehab.
700 Rt. 130 North, Suite 205
Cinnaminson, NJ 08077-3366
T: 609-531-2529
F: 609-531-2539
Toll free phone: 1-800-554-5584

I believe it is imperative that you obtain a damages expert to assist you in proving your damages as a result of MBNA's actions against you. You may wish to contact Mr. Pare directly.

Also, Defendant's counsel has repeatedly requested additional discovery from you and wants to reschedule the rest of your deposition. Said counsel has threatened to file a Motion to

Carlet D. Ward
Page 2

Compel against you for refusing to turn over the requested discovery and otherwise set a date to conclude your deposition.

Until the Court grants my motion to withdraw as your attorney in this case, I will continue to assist you with your case, but in order for me to do that effectively, I need your prompt cooperation and attention to these issues.

Please contact me immediately. Thank you.

Very truly yours,

ARCHER & GREINER
A Professional Corporation

BY: _____
"J" Jackson Shrum

9508982v1

67

# Archer&Greiner P.C.
ATTORNEYS AT LAW

"J" Jackson Shrum
*Member of Delaware, New Jersey and*
*Pennsylvania Bar*
jjshrum@archerlaw.com
302-356-6632 Direct

300 Delaware Avenue
Suite 1370
Wilmington, DE 19801
302-777-4350 Main
302-777-4352 Fax
**www.archerlaw.com**

March 12, 2013

Carlet D. Ward
201 Voshells Mill Star Hill Road
Dover, DE 19901

Re:  *Carlet D. Ward v. MBNA America*, Civil Action NO: 10-759-SLR

Dear Carlet:

Enclosed is the Court Order removing me as your attorney in the above-referenced case. From this point forward, I will no longer be able to assist you with your case. However, as I previously mentioned, I have been in substantial discussions with a proposed damages expert by the name of Bob Pare. His contact information follows:

Robert J. Paré, MS, CRC, LRC, CDMS
Consultative Review & Rehab.
700 Rt. 130 North, Suite 205
Cinnaminson, NJ 08077-3366
T:  609-531-2529
F:  609-531-2539
Toll free phone:  1-800-554-5584

I believe it is imperative that you obtain a damages expert to assist you in proving your damages as a result of MBNA's actions against you, regardless of whether you elect to use Mr. Pare or someone else.

Lastly as a reminder, Defendant's counsel has repeatedly requested additional discovery from you and wants to reschedule the rest of your deposition. Said counsel has threatened to file a Motion to Compel against you for refusing to turn over the requested discovery and otherwise set a date to conclude your deposition. You should contact the Defendant's counsel directly to discuss these issues without delay.

I wish you much success.

68

Carlet D. Ward
Page 2

Sincerely,

ARCHER & GREINER
A Professional Corporation

BY:_____
"J" Jackson Shrum

9520648v1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                          )
                                         )
          Plaintiff,                     )
                                         )
     v.                                  )  Civ. No. 10-759-SLR
                                         )
MBNA AMERICA (Bank of America),          )
                                         )
          Defendant.                     )

## ORDER

At Wilmington this 12th day of March, 2013, having reviewed the unopposed

motion to withdraw as counsel filed by "J" Jackson Shrum, Esquire, a member of the

Federal Civil Panel who had volunteered to represent plaintiff;

IT IS ORDERED that said motion (D.I. 40) is granted. The court declines to

attempt to refer representation of plaintiff's case to yet another member of the Federal

Civil Panel. Therefore, plaintiff shall proceed pro se, consistent with her status when

she filed her complaint.

United States District Judge

**IN THE UNITED STATES DISTRICT COUORT**
**FOR THE DISTRICT OF DELAWARE**

CARLET D. WARD,                          )
                                         )
                Plaintiff,               )
                                         )        C.A. No. 10-759 SLR
        v.                               )
                                         )
MBNA AMERICA (Bank of America),          )
                                         )
                Defendant.               )
                                         )

## ANSWER TO MOTION TO WITHDRAW AS COUNSEL TO PLAINTIFF

In response to Attorney J. Jackson Shrum, Esquire's motion to withdraw as counsel for plaintiff,

I, Carlet D. Ward, Plaintiff in the above captioned matter, answers in the following matter:

1. That to date, the Plaintiff has cooperated fully with the counsel and, disputes his claim

   that "communications and discovery-related issues between plaintiff and counsel had

   deteriorated significantly over the past months". The fact is that I have cooperated fully

   with counsel and, I reaffirm my position that more than enough documents were provided

   to counsel who, in turn, wanted to make it readily available to MBNA's attorneys who

   were at a disadvantage by having little or no information and documentation regarding

   my employment stay at MBNA America - up until the time that information was

   provided to them by counsel. Counsel over exaggerated his statement suggesting that

   "talks" have broken down between us on this one matter referring to me not further

   entrusting him with my daily journals/documentation on what transpired on the job at

71

MBNA America while pursuing a grievance. Counsel was a little too anxious to hand it over to the MBNA America's attorneys in this case for which I had disagree with;

2. As a plaintiff, I do have a legal right to not subject myself to any further hardship by knowingly signing on to an agreement term with counsel as outlined that I can not fulfill. I am not in any financial or economical position to do so. I am still very much economically oppressed and disadvantaged as this case was filed and approved under "forma pauperis" status because of that;

3. The alternative solution to the problem suggested was instead a client/lawyer agreement on a "contingency" basis attached with a retainer's fee which to me was a more real, suitable and/or appropriate under these circumstances;

4. In my opinion, the Archer & Grenier law group has tarnished my case via misrepresentation due to the damage of a vital piece of evidence entrusted into their possession – a recording of a telephone conference call between MBNA's Human Resources Department and myself as the audio was altered and made unintelligible to the human ear. But yet still, Attorney Shrum kept asking that more evidence be provided;

5. Attorney Shrum's personal attacks on me are found to be baseless and it suggests that he could very well have involved himself in unethical activity – quite possibly having a personal conflict of interest; prejudices; or, some other hidden agenda such as for political reasons or ambitions. After all, we were in the midst of a Presidential and state-wide election year and campaign and, he did come on board just prior to the Presidential and local primaries;

6. So, there are only a few objections to counsel's motion to withdraw as counsel to plaintiff:

72

A. That his firm, Archer & Greiner, be held solely responsible for my losses and
compensate me for any or all losses from the deposition procedure I was subjected to;
and, for the damaged tape recording I provided to counsel as evidence and, any or all
other evidence that have been provided to them that is or have been presented in
flawed condition;

B. That they, Archer & Greiner, strongly recommend and assist the court with finding
me another attorney to proceed with this case;

C. Or, that the firm, Archer & Grenier, appoint another attorney from their own firm to
continue on with the case as my counsel so that I won't personally suffer a loss come
this September's civil trial.

7. Under these terms and condition do I, Carlet D. Ward, accept counsel's motion to
withdraw.

Carlet D. Ward
Plaintiff

3/12/13
Date

SWORN AND SUBSCRIBED before me this **12** day of **March**, 2013.

Stacey Marie Faivre
Notary Public
STACEY MARIE FAIVRE
NOTARY PUBLIC, STATE OF DELAWARE
MY COMMISSION EXPIRES JANUARY 27, 2014

## CERTIFICATE OF SERVICE

I, Carlet D. Ward, hereby certify that on this day, March 13, 2014, I have mailed a copy of the document within to the following addresses:

J. Jackson Shrum (No. 4757)
Archer & Greiner
300 Delaware Avenue, Suite 1370
Wilmington, DE  19801
(302)777-4350

James McMackin III, Esq.
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801

Carlet D. Ward, Plaintiff
201 Voshells Mill Star Hill Road
Dover, DE  19901
(302) 264 1895

74

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                          *
                                         *
    Plaintiff,                      *
                                         *
v.                                       *    Civil Action No.: 10-759-SLR
                                         *
MBNA AMERICA (Bank of America),          *
                                         *
    Defendant.                      *

### LOCAL RULE 7.1.1 ACKNOWLEDGMENT

Pursuant to Federal Rule 37 and Local Rule 7.1.1, and as set forth in the accompanying motion, Defendant's counsel in good faith attempted to confer with Plaintiff's counsel prior to the withdrawal of his appearance regarding a reasonable schedule for the supplemental production and continued deposition, but received no response. Plaintiff is presently pro se, obviating the need for further attempts to resolve the dispute pursuant to Local Rule 7.1.1

MORRIS JAMES LLP

James H. McMackin, III (#4284)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899
(302) 888-5849
*jmcmackin@morrisjames.com*
Attorneys for Defendant

OF COUNSEL:
Elena D. Marcuss, Esquire
McGuireWoods LLP
7 Saint Paul Street, Suite 1000
Baltimore, MD 21202-1671

Dated:  March 13, 2013

6231599/

7 6

**Other Documents**

1:10-cv-00759-SLR Ward v.
MBNA America

PaperDocuments,MEDIATION-
SRF

## U.S. District Court

## District of Delaware

**Notice of Electronic Filing**

The following transaction was entered by McMackin, James on 3/13/2013 at 1:57 PM EDT and filed on 3/13/2013

| | |
|---|---|
| **Case Name:** | Ward v. MBNA America |
| **Case Number:** | 1:10-cv-00759-SLR |
| **Filer:** | MBNA America |
| **Document Number:** | 44 |

**Docket Text:**
**STATEMENT re [43] MOTION to Compel** *Pursuant to Local Rule 7.1.1.* **by MBNA America. (Attachments: # (1) Certificate of Service)(McMackin, James)**

**1:10-cv-00759-SLR Notice has been electronically mailed to:**

Elena D. Marcuss    emarcuss@mcguirewoods.com

James H. McMackin , III    JMcMackin@MorrisJames.com, clees@morrisjames.com, jmcvey@morrisjames.com, jstamper@morrisjames.com

**1:10-cv-00759-SLR Filer will deliver document by other means to:**

Carlet D. Ward
201 Voshells Mill Star Hill Road
Dover, DE 19901

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=3/13/2013] [FileNumber=1761540-0
] [0aa8c77749aa508c99388fa32a169ee7cd9d6e05c2f996955b7140bae531e5eb82d
896421430de6477e873a6ace7d31bac6e604f19b9e6b28439f57580e91a6b]]
**Document description:** Certrificate of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=3/13/2013] [FileNumber=1761540-1
] [b1c8136cc14b7b91989 1f04452333334856a53502341b1332517a134b4111e0862d
77f3d7aded137706dd62f67cc5d6b4fc4bb55fd85ed2b8d8df5dc2f559121]]

$77$

## Motions

1:10-cv-00759-SLR Ward v.
MBNA America

PaperDocuments,MEDIATION-
SRF

### U.S. District Court

### District of Delaware

#### Notice of Electronic Filing

The following transaction was entered by McMackin, James on 3/13/2013 at 1:46 PM EDT and filed on
3/13/2013
**Case Name:**      Ward v. MBNA America
**Case Number:**   1:10-cv-00759-SLR
**Filer:**      MBNA America
**Document Number:** 43

**Docket Text:**
**MOTION to Compel - filed by MBNA America. (Attachments: # (1) Exhibits A through F, #
(2) Text of Proposed Order, # (3) Certificate of Service)(McMackin, James)**

**1:10-cv-00759-SLR Notice has been electronically mailed to:**

Elena D. Marcuss    emarcuss@mcguirewoods.com

James H. McMackin , III    JMcMackin@MorrisJames.com, clees@morrisjames.com,
jmcvey@morrisjames.com, jstamper@morrisjames.com

**1:10-cv-00759-SLR Filer will deliver document by other means to:**

Carlet D. Ward
201 Voshells Mill Star Hill Road
Dover, DE 19901

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=3/13/2013] [FileNumber=1761523-0
] [c7cea95e40404763e62aeab1b34f17dc301659f4a7ea1df1f92454579419c1b271e
546bc10b16a696b755e682909cd54315e895a3d44e878612179d6bff921af]]
**Document description:** Exhibits A through F
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=3/13/2013] [FileNumber=1761523-1

] [a054cb7802a4cf7fbbd7d7bea39781392ef5bfa838960fba7cdd5f5b490d8793df0
7cd2061ae38627ffad6adedb34b4a856ef5054a767a00acf8842ea9f3da4c]]

**Document description:** Text of Proposed Order

**Original filename:** n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1079733196 [Date=3/13/2013] [FileNumber=1761523-2
] [15690a0a5699f02652a0b60ca1fc61cf8d07590bc4652eb717a92f5be8de8d78372
1e6ecafda6ce0eb26b9e684a8ca470a4b4e2df31cdae36f751405844fb6ed]]

**Document description:** Certificate of Service

**Original filename:** n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1079733196 [Date=3/13/2013] [FileNumber=1761523-3
] [bee5b79382d22aa47486a2c27d0ef388d860a5211586660d92c2537236f483e4130
59f73bc30034e20a113498d60ce42b9eb05e0502b2071f8dab9a48dfd70df]]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARLET D. WARD, | * |
| Plaintiff, | * |
| v. | *    Civil Action No.: 10-759-SLR |
| MBNA AMERICA (Bank of America), | * |
| Defendant. | * |

### DEFENDANT'S MOTION TO COMPEL

Defendant FIA Card Services, N.A.[1] ("Defendant"), through undersigned counsel and pursuant to Rule 37 of the Federal Rules of Civil Procedure, respectfully submits this motion to compel Plaintiff Carlet Ward to produce documents responsive to Defendant's document requests and appear for the completion of her deposition. In support of this Motion, Defendant states as follows:

1.    Plaintiff's filed the instant Complaint alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on September 7, 2010. (D.I. 2.)

2.    After counsel was appointed for Plaintiff and the Court issued a Scheduling Order (D.I. 26 and 30), Defendant served Interrogatories and Requests for Production of Documents and Property ("Requests for Production") on Plaintiff on September 20, 2012. (D.I. 31.) Plaintiff served her responses to those written discovery requests on November 2, 2012. (D.I. 36.)

3.    Defendant noticed Plaintiff's deposition for December 18, 2012. (D.I. 37.)

---

[1]    MBNA Marketing Systems Inc., which is Ms. Ward's former employer and the entity that waived service in this matter, has since merged into Banc of America Card Servicing Corporation, which subsequently transferred all of its assets to FIA Card Services, N.A.

4.    At the beginning of Plaintiff's deposition which was scheduled to start at 10 am, Plaintiff's counsel informed Defendant's counsel that Plaintiff could not stay beyond about 2 pm. Plaintiff stated that she was more than willing to complete her deposition on a separate day if necessary.  (Dec. 18, 2012 Tr. at 5:9-9:13.)[2]

5.    During her deposition, Plaintiff identified a number of items that are responsive to Defendant's Requests for Production that had not been produced, including:

    a.  A file she maintained related to her former employment with Defendant (Tr. at 10:4-14:18, 180:18-181:22);

    b.  A recording of a conversation between Plaintiff and human resources employees (Tr. 122:13-123:17);

    c.  Calendars of daily events in which Plaintiff wrote notes about events relevant to her claims (Tr. 108:8-109:3, 121:13-122:11, 187:21-23);

    d.  Records relating to amounts she has earned since her employment with Defendant ended (Tr. 188:10-190:11); and

    e.  Records related to Plaintiff's search for jobs since her employment with Defendant ended (Tr. 190:13-192:5).

6.    Plaintiff's deposition was held open pending the production of the additional documents identified and because of Plaintiff's need to leave early to get home safely.  (Tr. 192:6-193:12.)

7.    Plaintiff, though counsel, produced some of the outstanding responsive materials on January 11, 2013.  On January 28, 2013, Defendant's counsel sent an e-mail to Plaintiff's counsel thanking him for the supplemental production and identifying additional documents that

---

[2]    Excerpts from the Deposition of Carlet D. Ward are attached hereto as Exhibit A.

Plaintiff had identified during her deposition that had not yet been produced. (Jan. 28, 2013 E-mail from Marcuss to Shrum, attached hereto as Exhibit B.)   Defendant asked that the outstanding documents be produced by February 8, 2013.   (*Id.*)   In addition, Defendant asked Plaintiff to hold March 5, 2013 for the completion of her deposition.   (*Id.*)

8.      On February 22, 2013, after the mediation conference, Defendant's counsel sent Plaintiff's counsel an email confirming the continuation of Plaintiff's deposition and requesting that the outstanding documents be produced by March 1, 2013.   (Feb. 22, 2013 E-mail from McMackin to Shrum, attached hereto as Exhibit C.)   On February 25, 2013, after the mediation conference, Defendant formally noticed the continuation of Plaintiff's deposition for March 5, 2013. (D.I. 39.)

9.      On March 1, 2013, Plaintiff's counsel informed Defendant's counsel that Plaintiff would not be able to attend her deposition on March 5 and requested that it be rescheduled. (March 1, 2013 E-mail from Shrum to McMackin, attached hereto as Exhibit D.)   Defendant's counsel responded that it was amenable to rescheduling the deposition and allowing Plaintiff additional time to produce documents if dates certain for those items in the reasonably near future could be agreed upon. (March 1, 2013 E-mail from Marcuss to Shrum, attached hereto as Exhibit E.)   On March 7, 2013, Defendant's counsel inquired again as to when Plaintiff was going to produce the outstanding documents and make herself available for the continuation of her deposition.   (March 7, 2013 E-mail from Marcuss to Shrum, attached hereto as Exhibit F.) Plaintiff's counsel did not respond and has since moved to withdraw. (D.I. 40.)

10.     Pursuant to Federal Rule of Civil Procedure 37, the court may compel and sanction a party for failing to attend a properly noticed deposition and for failing to respond to a properly served request for production. *See* Fed. R. Civ. P 37(a) and (d). As explained above,

3

Plaintiff has partially but not fully complied with Defendant's Requests for Production and request to depose her. However, Plaintiff has no justification for her failure to comply fully by producing the outstanding documents identified during her December deposition and appearing for the continuation of her deposition.

11.    Accordingly, Defendant respectfully requests that the Court order Plaintiff to produce all outstanding documents responsive to Defendant's Request for Production on or before March 29, 2013, and appear in Wilmington, Delaware for the continuation of her deposition on April 11, 2013.

WHEREFORE, Defendant respectfully requests that the Court enter an order, in substantially the form attached, directing Plaintiff to produce the outstanding documents and appear for the continuation of her deposition.

MORRIS JAMES LLP

James H. McMackin, III (#4284)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-5849
*jmcmackin@morrisjames.com*
Attorneys for Defendant

OF COUNSEL:
Elena D. Marcuss, Esquire
McGuireWoods LLP
7 Saint Paul Street, Suite 1000
Baltimore, MD 21202-1671

Dated: March 13, 2013

4

## IN THE UNITED STATES DISTRICT COUORT
## FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                          )
                                         )
                Plaintiff,               )
                                         )        C.A. No. 10-759 SLR
        v.                               )
                                         )
MBNA AMERICA (Bank of America),          )
                                         )
                Defendant.               )
                                         )

## ANSWER TO DEFENDANT'S MOTION TO COMPEL

Plaintiff, Carlet D. Ward, in the above captioned case, request that the court reject defendant's

motion to compel an order to produce further documents in response to the Defendant's Request

for Production and, to reject a motion to appear for a continuation of a deposition schedule on

April 11, 2013 for the following reasons:

1.  The Plaintiff had originally objected to taking part in the first deposition held on
    December 18, 2012 at 500 Delaware Avenue, Wilmington;

2.  That there is still an unresolved issue regarding Archer & Greiner's role in replacing
    Attorney Jack Shrum as plaintiff's counsel as requested;

3.  That there is also still an unresolved issue  as to whether or not the law firm, Archer &
    Greiner violated the ethical code of standards for Attorney Shrum's unethical behavior
    and misconduct in this case when plaintiff entrusted him with important evidence to be
    used in this case only to have it tampered with and altered allowing it to be presented in
    an unacceptable and inaudible way; as well as be held completely accountable and

responsible for his actions as submitted in the March 14, 2013 Answer To Motion To Withdraw As Counsel To Plaintiff;

4.  And, whether the law firm of James Morris, LLP and its counsels, James H. McMackin III and, Elena D. Marcuss, Esquire, were also in violation of questionable unethical practices throughout the early court proceedings via communication to and from Attorney Shrum as well as the possible interference in the evidence and documents already presented to them by counsel in this case;

5.  And, that both law firms are a party to a wrongful act or acts under federal provisions 18 U.S.C., statutes 1512; 1503; 1505; and 371; and, should be reprimanded and disciplined if not charged for these wrongdoings.

For the above reasons, Plaintiff motions the court to reject defendant's motion to compel until the above issues and/or charges the plaintiff has brought forth as a legitimate complaint under ethics statutes has been addressed by the courts.

Carlet D. Ward

_____
Carlet D. Ward, Plaintiff
201 Voshells Mill Road
Dover, DE  19901
(302) 264-1895

4/2/13
_____
Date

85

# CERTIFICATE OF SERVICE

I, Carlet D. Ward, Plaintiff, do hereby certify that on this day, April 2, 2013, I have mailed a

copy of this document within to the following addresses:

Archer & Greiner
300 Delaware Avenue, 1370
Wilmington, DE  19801
(302) 777-4350

James McMackin III, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
(302) 888-5849

Elena D. Marcuss, Esquire
McGuire Woods LLP
7 Saint Paul Street, Suite 1000
Baltimore, MD  21202-1671

Carlet D. Ward
201 Voshells Mill Road
Dover, DE  19901
(302) 264-1895

*86*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,

       Plaintiff,

   v.

                        Case No.: 10-759-SLR

MBNA AMERICA (Bank of America),

       Defendant.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant MBNA America (Bank of America) ("Defendant") hereby moves for summary judgment with respect to all counts alleged against it in Plaintiff's Complaint. In support of this Motion, Defendant relies on the accompanying Defendant's Opening Brief in Support of Its Motion for Summary Judgment.

MORRIS JAMES LLP

James H. McMackin, III (#4284)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899
(302) 888-5849
*jmcmackin@morrisjames.com*
Attorneys for Defendant

Dated:  May 17, 2013

6484049/

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Carlet Ward started working for MBNA in October 2003. Shortly after the merger with Bank of America Corporation, Plaintiff's worksite was closed and as a result her employment ended on March 10, 2006. Plaintiff applied for various other positions within Bank of America, including a teller position, but was not selected.

In August 2006, Plaintiff submitted a Charge Information Questionnaire to the Equal Employment Opportunity Commission ("EEOC") in which she complained that she was not hired for the teller position for which she applied in March 2006 because of her previous complaints of discrimination. Her formal Charge of Discrimination making the same complaint was filed on April 3, 2007. On June 7, 2010, the EEOC issued its determination that the company had not violated the law.

Plaintiff filed the instant Complaint alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on September 7, 2010. *(D.I. 2.)* The Court appointed Plaintiff counsel who represented Plaintiff from August 1, 2012 through March 12, 2013, which included all but one week of the discovery period and the mediation. *(D.I. 26, 30, 38, 40, and 42.)* On March 13, 2013, Defendant filed a motion to compel Plaintiff to produce documents and appear for the completion of her deposition. *(D.I. 43.)* That motion has not yet been ruled upon, but will be moot if the Court grants the instant motion for summary judgment, which Defendant files in accordance with the Court's Scheduling Order. *(D.I. 30.)*

## SUMMARY OF ARGUMENT

The only claim for which Plaintiff has exhausted her administrative remedies is her claim that her non-selection for the teller position in March 2006 was in retaliation for her previous internal complaints of discrimination in September 2005. On that claim, the record establishes that there is absolutely no connection between Plaintiff's September 2005 complaints and her non-selection for the teller position in March 2006. The individuals involved were entirely different and there is no evidence that the decisionmaker for the teller position had any knowledge of Plaintiff's previous complaints. Thus, Plaintiff cannot establish a *prima facie* case of retaliation. Moreover, Plaintiff was given a legitimate, non-retaliatory reason for her non-selection and there is no evidence of pretext; that is, that the legitimate reason for her non-selection is false or that retaliation is the real reason.

89

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                    )
                                   )
              Plaintiff,           )
                                   )
       v.                          )    Civ. No. 10-759-SLR
                                   )
MBNA AMERICA (Bank of America),    )
                                   )
              Defendant.           )

**O R D E R**

At Wilmington this 23rd day of May, 2013,

IT IS ORDERED that the jury trial originally scheduled to commence on Monday,

September 16, 2013 is postponed until further order of the court.

_____
United States District Judge

90

**Utility Events**

1:10-cv-00759-SLR Ward v. MBNA America

PaperDocuments,MEDIATION-SRF

## U.S. District Court

## District of Delaware

**Notice of Electronic Filing**

The following transaction was entered on 5/23/2013 at 4:31 PM EDT and filed on 5/23/2013

| | |
|---|---|
| **Case Name:** | Ward v. MBNA America |
| **Case Number:** | 1:10-cv-00759-SLR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**The September 5, 2013 pretrial conference and September 16, 2013 jury trial have been removed from the court's calendar per order of May 23, 2013 postponing the trial. (nmfn)**

**1:10-cv-00759-SLR Notice has been electronically mailed to:**

James H. McMackin, III JMcMackin@MorrisJames.com, clees@morrisjames.com, jmcvey@morrisjames.com, jstamper@morrisjames.com

Elena D. Marcuss emarcuss@mcguirewoods.com

**1:10-cv-00759-SLR Filer will deliver document by other means to:**

Carlet D. Ward
201 Voshells Mill Star Hill Road
Dover, DE 19901

*91*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                        )
                                       )
                    Plaintiff,         )
                                       )        C.A. No. 10-759 SLR
        v.                             )
                                       )
MBNA AMERICA (Bank of America),        )
                                       )
                    Defendant.         )
                                       )

## MOTION FOR OUT OF ORDER

## MOTION TO STRIKE

## MOTION TO QUASH

1.  The defendant's motion for Summary Judgment is an improper motion and is out of order.

2.  The motion is in violation of procedural rules i.e. guilty of a breach of decorum; misconduct; or an unlawful act and it is inherently inappropriate for deliberative consideration at this time under U.S.C. 18 c. 1, 2.

3.  Plaintiff contends that there is "substantial evidence in this case that a dispute of material facts exists" as already presented and, that there are disputes of "material" facts requiring a trial to resolve and that "only" the Plaintiff is entitled to a judgment.

4.  Plaintiff's motion to Quash is justified due to the unresolved issues already presented in the previous Answer to Motion to Compel as being unreasonable, irregular or

92

oppressive proceedings especially deriving from a controversial "Deposition" that took place at the defendant's law firm, Morris James, LLP, office on December 18, 2012.

5.   Subsequently, their Motion requires an opposing Motion to Strike as well as a Motion to Quash due to the following facts:

A.   The Defendant's March 13, 2013 Motion to Compel was never addressed, responded to, or ordered by the Court;

B.   The Plaintiff's April 2, 2013 Answer to the Defendant's Motion to Compel was never addressed, responded to, or ordered by the Court;

C.   No decision was handed down or issued regarding the above matter;

D.   Plaintiff, reiterates the original fact that she left a complete file of documents as requested by the Defendants (except the diary) in the care of and possession of her then attorney's law firm, Archer & Greiner for three straight weeks for photocopying from January 8 through 29, 2013 to make available and give copies to the defendant's law firm; and

E.   That there has been absolutely no discussion, communications or correspondences received regarding both "Motion" and "Answer to Motion to Compel" from the Court.

6.   Because of the "Multiplicity of Offenses" in this case, Plaintiff motions the Court to Strike and Quash Defendant's motion for a Summary Judgment and, to move forward with the previous motion and answer on the table for a court decision.

7.   Plaintiff also would like to remind both the Defendants and the Court about Rule 110 – Indigent Persons; and, the Delaware Judicial Guidelines for Civil Hearings Involving Self-Represented Litigants (May 11, 2011) – Pro Se Representation – Administrative

*93*

Directive 178, JGS Rep Rules 1.1 to 5.2; Judicial Guidelines: Adoption, JGS Rep;

Preamble; Conduct of Proceedings, JGS Rep Rules 4.1 - 4.3 throughout the remainder

of this civil proceedings.

_5/4/13_

Date

_Carlet D. Ward_

Carlet D. Ward, Pro Se
201 Voshells Mill Road
Dover, DE  19901
(302) 264-1895
carletward@yahoo.com

## CERTIFICATE OF SERVICE

I, Carlet D. Ward, Plaintiff, do hereby certify that on this day, May 4, 2013, I have mailed a

copy of this document within to the following addresses:

James McMackin III, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-5849

Elena D. Marcuss, Esquire
McGuire Woods LLP
7 Saint Paul Street, Suite 1000
Baltimore, MD 21202-1671

*Carlet D. Ward*

Carlet D. Ward
201 Voshells Mill Road
Dover, DE 19901
(302) 264-1895

SWORN TO AND SUBSCRIBED before me this ___4___ day of ___June___, 2013.

*Nicole B. Andrew*

Notary

NICOLE B. ANDREW
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires July 18. 2013

95

201 Voshells Mill Road
Dover, DE 19901

July 23, 2013

c/o Clerk of the Court
The Honorable Judge Sue L. Robinson
U.S. District court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3570

**Re: Civil No. 10-759-SLR – Ward v. MBNA America (Bank of America)**

Dear Judge Robinson,

 I am in receipt of a court order from you dated May 23, 2013 postponing both the pre-trial conference on September 5th and the jury trial set for September 16th. Although I do not know the circumstances surrounding the court's decision to postpone, as the plaintiff in this case, I have been and am still being turned down, shafted and denied the opportunity to retain another attorney.

Under these circumstances, I believe that it is necessary as well as in its proper order to request that the court re-consider the plaintiff's, "Answer to Defendant's Motion to Compel" for corrective action as a remedy for the wrong that has been done to me. Federal courts should be allowed or at least be put in a position to make decisions about whether to pursue allegations of criminal conduct and behavior or at least request that there be an investigation into these allegations as charged by the plaintiff in this case. Both law firms in this case were charged by me, the plaintiff, as being in corroboration with each other in an attempted conspiracy to fraud me out of my right to a discrimination case and a day in court. Both firms misrepresented themselves as well and, were in direct violation of Federal Provisions 18 U.S.C. statutes 1512; 1503; 1505; and 371 as well as claims listed in the original complaint.

Also, the court certainly has the judiciary power to order plaintiff's former legal counsel to "produce" and "deliver" the documents that was requested and, for which was motion to compel by the defendants in this case. Meanwhile, I, too, as the plaintiff in this case, am taking the liberty of attaching a "Motion for Summary Judgment" for a decision.

Thank you very much for your consideration.

Sincerely,

Carlet D. Ward

Carlet D. Ward
Plaintiff
(302) 264-1895

Attachment: Plaintiff's Motion for Summary Judgment

96

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                    )
                                   )
                    Plaintiff,     )
                                   )        C.A. No. 10-759 SLR
            v.                     )
                                   )
MBNA AMERICA (Bank of America),    )
                                   )
                    Defendant.     )
                                   )

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of civil Procedures, Plaintiff, Carlet D. Ward, hereby moves for summary Judgment with respect to all counts as charged in the plaintiff's complaint against the defendant MBNA America (Bank of America).

The Defendants, MBNA America, is treading on the civil procedures of this case and has proven to conduct themselves in an unethical and dishonest manner in its dealings with the civil procedures. They have entered motions to compel and, motions for summary judgment which is still on the table claiming that the court demand plaintiff's counsel to turn over requested documents as well as a continuation of a deposition that had taken place on December 18, 2012.

As stated, on January 8, 2013, plaintiff hand-delivered an expandable file folder of documents to her legal counsel for photocopying and delivery to the Defendants as requested for compliance. The Defendant's sufficient of or lack of material facts in this case is not the fault of the plaintiff. In the defendant's haste, the defendant failed to exhaust its legal avenues under

97

Title V:  Disclosures and Discovery Procedures and, as outlined in the Plaintiff's Answer to Defendant's Motion to Compel and the 5/4/13 Motion for Out of Order/Motion to Strike and Motion to Quash.

And, because the Plaintiff sees no end or an immediate remedy as she is once again forced to seek justice after being held down to a mere 12 hour work week on a temporary assignment at the Delaware Department of Insurance located at 841 Silver Lake Boulevard, Dover, DE  19904 at $9.00 per hour and, for being denied an equal opportunity at a permanent full-time position, advancement and/or promotion to a full-time status with more pay, she was forced to file a "Whistleblower" discrimination grievance with the Delaware Department of Labor in which she became a victim of a state-wide political Coup 'de tat against Delaware's current elected Commissioner who went on to win re-election upsetting the people who took part in the coup against her.  I was retaliated against and, once again, terrorized by constant "snaking" on my property and yard for which I reside – the very same tactics as charged in this case.  Plaintiff believes that if counsel had first sealed an "injunction" order from the courts, that that would have alleviated some of the harassment taken place today.  Unfortunately, the Delaware Department of Labor has once again shunned their responsibility by denying me the right to a grievance as before and, by processing my complaint as a discrimination complaint instead of a "Whistleblowers" complaint which fell under a different process.  I was passed over for a remedy and was given another "right to sue" letter which has no face value.

For these reasons, I seek the court's order to finally put an end to this case and enter an order in favor of the plaintiff for a summary judgment.

_Carlet D. Ward_                        _7/24/13_
Carlet D. Ward, Plaintiff          Date

98

**CERTIFICATE OF SERVICE**

I, Carlet D. Ward, Plaintiff, do hereby certify that on this day, _24 of July_, 2013, I have

mailed a copy of this document within to the following addresses:

James McMackin III, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-5849

Elena D. Marcuss, Esquire
McGuire Woods LLP
7 Saint Paul Street, Suite 1000
Baltimore, MD 21202-1671

Archer & Greiner, P.C.
300 Delaware Avenue,
Suite 1370
Wilmington, DE 19801

_Carlet D. Ward_
Carlet D. Ward
201 Voshells Mill Road
Dover, DE 19901
(302) 264-1895

SWORN TO AND SUBSCRIBED before me this _24th_ day of _July_, 2013.

_Stacey Marie Faivre_
Notary

STACEY MARIE FAIVRE
NOTARY PUBLIC, STATE OF DELAWARE
MY COMMISSION EXPIRES JANUARY 27, 2014

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CARLET D. WARD,                          )
                                         )
              Plaintiff,                 )
                                         )
       v.                                ) Civ. No. 10-759-SLR
                                         )
MBNA AMERICA (Bank of America),          )
                                         )
              Defendant.                 )

**ORDER**

At Wilmington this 9⁺ day of August, 2013, having considered plaintiff's motion for summary judgment (D.I. 57);

IT IS HEREBY ORDERED that the motion is **denied** as moot for the reasons that follow:

On September 6, 2012, the court entered a scheduling discovery order that set a May 17, 2013 deadline for filing motions for summary judgment. (*See* D.I. 30) Defendant filed its motion May 17, 2013 (D.I. 48) and, on July 22, 2013, the court granted the motion. (See D.I. 54, 55)

On July 25, 2013, plaintiff filed the instant motion for summary judgment. (D.I. 57) The motion was not timely filed and plaintiff did not seek leave to file the motion. Finally, there are no remaining issues, the court having granted defendant's motion for summary judgment on July 22, 2013.

UNITED STATES DISTRICT JUDGE

/00

## Orders on Motions
1:10-cv-00759-SLR Ward v. MBNA
America **CASE CLOSED on 07/23/2013**

CLOSED,PaperDocuments,MEDIATION
-SRF

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered on 8/9/2013 at 11:54 AM EDT and filed on 8/9/2013
**Case Name:**       Ward v. MBNA America
**Case Number:**     1:10-cv-00759-SLR
**Filer:**
**WARNING: CASE CLOSED on 07/23/2013**
**Document Number:** 60

**Docket Text:**
**ORDER - denying as moot [57] Motion for Summary Judgment. (See Order for details).
Signed by Judge Sue L. Robinson on 8/9/13. (rwc)**

**1:10-cv-00759-SLR Notice has been electronically mailed to:**

James H. McMackin, III JMcMackin@MorrisJames.com, clees@morrisjames.com,
jmcvey@morrisjames.com, jstamper@morrisjames.com

Elena D. Marcuss emarcuss@mcguirewoods.com

**1:10-cv-00759-SLR Filer will deliver document by other means to:**

Carlet D. Ward
201 Voshells Mill Star Hill Road
Dover, DE 19901

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=8/9/2013] [FileNumber=1904127-0]
[67384913a4e0da54c45d969fc55c7c92f6bf64be288bf5f58401bd4a92bfbadaed0b
31eee6216fc6eb0c63028793b0b53c676edbca53bfa3ce4d9be78352921e]]

*101*

## NOTICE OF APPEAL
## TO
## U.S. COURT OF APPEALS, THIRD CIRCUIT

**U.S. District Court for the District of Delaware**

**CIRCUIT COURT**
**DOCKET NUMBER:** _____
                    **(leave blank)**

**FULL CAPTION IN DISTRICT COURT AS FOLLOWS:**

**DISTRICT COURT**
**DOCKET NUMBER:** Civ.No: 10-759-SLR

CARLET D. WARD

_____

v.

**DISTRICT COURT**
**JUDGE:** S    Sue L. Robinson

MBNA AMERICA (BANK OF AMERICA)

_____

                                        CARLET D. WARD
Notice is hereby given that _____
                                        (Named Party)

appeals to the United States Court of Appeals for the Third Circuit from [X] Judgment, [ ] Order,

[ ] Other (specify) _____

_____

entered in this action on   7/23/2013
                          _____
                                (date)

Dated:   8/20/2013
       _____

*Carlet D. Ward*
_____
(Counsel for Appellant-**Signature**)

Carlet D. Ward, Pro Se
_____
(Name of Counsel - **Typed**)

201 Voshells Mill Road
_____
(Address)

Dover, DE  19901
_____
(City, State Zip)

(302) 264-1895
_____
(Telephone Number)

James H. McMackin, III
_____
(Counsel for Appellee)

500 Delaware Avenue, Suite 1500
_____
(Address)

Wilmington, DE  19801
_____
(City, State Zip)

(302) 888-5849
_____
(Telephone Number)

**NOTE: USE ADDITIONAL SHEETS if all appellants and/or all counsel for appellees cannot be listed on the
Notice of Appeal sheet.**

*102*

# UNITED STATES COURT OF APPEALS
for the THIRD CIRCUIT

CARLET D. WARD )
)
)
)
v. )
) No.
MBNA AMERICA (BANK OF AMERICA) )
)
)
)

## AFFIDAVIT ACCOMPANYING MOTION
## FOR PERMISSION TO APPEAL IN FORMA PAUPERIS

| Affidavit in Support of Motion | Instructions |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.) | Complete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number. |

Signed: *Carlet D. Ward*        Date: 8/20/13

My issues on appeal are:

Please see the attached sheet for issues.

/03

Attachment:

My issues on appeal:

I certainly can empathize wholeheartedly about how current and unfavorable times in our country, in particular, here in the State of Delaware are occurring. Certain chain of events have taken place and have had a direct impact on how judicial and/or court decisions and outcome are made as well as having set the tone for bad judgment and bad decisions within the two professions (legal and judicial) in high profile and local civil and criminal cases such as the Trayvon Martin, Paula Dean, Snowden, and, Mike Zimmerman's upcoming trial have shaped our society as well as current controversial figures in legal battles such as Delaware's Lou Freeh, DuPont selling off its chemical division; and, Bank of America's woes with the federal government, etc. Also, Delaware is ranked 5th in the nation in "Crime and Sexual Offense"; and, 8th in the nation for being an "unfriendly" state tells the story of this state's woes and social problems that exist. However, in spite of this as well as the patterns of judicial behavior being set today, the "show" must go on and it must go on without the corruptive and negative forces, interferences and, its systematic racist and classist practices. I, as the plaintiff, in this case deserve "fair play" and a level playing field to exercise my right as a victim of discrimination to seek justice and relief in the courts – I've earned it, worked hard for it and deserve it – as a victim of an unjust decision as handed down by another female – a white Caucasian female judge, Sue L. Robinson, in this civil matter. I am being denied that right. Here are some of the major issues in dispute:

1.  Defendants in this case, Bank of America (MBNA America) is the second largest bank in the United States;
2.  Bank of America acquired and merged and phased out MBNA America in January, 2006 while I was still employed with them until their closing. Since that time, Louis Freeh, a former employee at MBNA America, has established himself as an expert on Corporate Bankruptcies throughout the country;
3.  Bank of America has been in a financial crisis since 2008 for their contributions and role in the housing and real estate bust/collapse;
4.  Since 2010 Bank of America has had to set aside more than $42 billion dollars in litigation expenses, payouts and reserves and, while investor's losses total $70 million plus an additional $50 million as estimated in the future;
5.  The U.S. Government, once again, is suing Bank of America for defrauding their investors when it sold $850 million worth of mortgage-backed securities bank in 2008 – selling 1,191 loans that didn't comply with the bank's standards;
6.  Bank of America houses a huge commercial building located on the corner of King Street and French Street across from Rodney Square in Wilmington. Their presence, power, wealth and, influence is deeply felt throughout the City and State. Bank of America has established themselves as a major employer in the State of Delaware just as MBNA America once had established themselves;
7.  After completing a temporary job with the U.S. Census Bureau as a Census Taker, I qualified for unemployment benefits and enrolled in real estate school in September of 2010 at the Long & Foster Real Estate School in Bear attending three nights per week until completion. I passed the state exam and received my real estate license in March 2011. I had to take an inactive leave because I took a loss on my real estate investment for not being able to sell my listed properties and for not getting any cooperation from my colleagues and broker;
8.  I am black, female, 57 years old on public assistance: food stamps and Medicaid; and, I have been unemployed since 2010 until March, 2012 and, from 2008 to 2010 without any unemployment benefits at all. I was given a part-time temporary job assigned at a state agency working 12 hours per week for $9.00 per hour and I am still unable to find full-time or permanent employment and, being discriminated in the job market.
9.  I recently filed a whistleblower's complaint against my current assigned place of employment for their role and conspiracy to defraud me out of this case and for their harassment tactics and, was rejected from their interference;
10. The Judicial Panel of the US District Court had appointed two attorneys to represent me in this civil matter against MBNA America: Andrew Rennick; and, J.Jack Shrum. Both attorneys accepted their positions under the terms that they see the case through to the very end.
11. Attorney Rennick made copies of my complaint and shortly thereafter withdrew claiming that he took another job with another law firm;
12. Attorney Jack Shrum of Greiner & Archer, submitted me to a controversial deposition conducted by the Defense; took my case file of documents and evidence for photocopying, tampered with it and, never gave Bank of America's attorney's copies as requested and then withdrew from the case; and, when confronted, he confessed to being part of a "black-job" (COINTELPRO) operation to botch or sabotage my case;
13. Both appointed attorneys gathered illegal information under false pretense as a means to get my case dismissed;

Issues continued...

14. I had initially forewarned the Judge (Sue L. Robinson) about the pattern of unethical behavior on the part of the attorneys throughout the state who had openly and publicly corrupted and prejudices themselves and, refused to represent me in this case or, to finish the job.

15. There were still outstanding "motions" and issues not yet resolved or handed a judgment and/or order prior to the defendants being issued the dismissal order.

16. My civil case was filed seeking a mere $300,000 employment discrimination damage suit in comparison to what is happening to Bank of America now; and

17. Finally, Bank of America, once again, refused to consider me for several job positions in particular, "Home Services Specialist" since I already had a real estate license and gained the real estate market experience I needed throughout 2011 by continuing their discriminatory practices and tactics towards me which has filtered over into my current temporary job assignment at the State Department of Insurance with their interference and fraud and, with my past efforts in trying to find suitable, full-time and permanent employment throughout the state.

18. For these underlying issues, I deserve better as well as equal justice in the courts on the appeal.

*105*

1.  *For both you and your spouse estimate the average amount of money received from each
    of the following sources during the past 12 months. Adjust any amount that was received
    weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use
    gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ 432.00 | $ N/A | $ 432.00 | $ N/A |
| Self-employment | $ 0 | $ N/A | $ 0 | $ N/A |
| Income from real property (such as rental income) | $ 0 | $ N/A | $ 0 | $ N/A |
| Interest and dividends | $ 0 | $ N/A | $ 0 | $ N/A |
| Gifts | $ 0 | $ N/A | $ 0 | $ N/A |
| Alimony | $ 0 | $ N/A | $ 0 | $ N/A |
| Child support | $ 0 | $ N/A | $ 0 | $ N/A |
| Retirement (such as social security, pensions, annuities, insurance) | $ 0 | $ N/A | $ 0 | $ N/A |
| Disability (such as social security, insurance payments) | $ 0 | $ N/A | $ 0 | $ N/A |
| Unemployment payments | $ 0 | $ N/A | $ 0 | $ N/A |
| Public-assistance (such as welfare) | $ 0 | $ N/A | $ 0 | $ N/A |
| Other (specify): | $ 0 | $ N/A | $ 0 | $ N/A |
| **Total monthly income:** | $ 432.00 | $ N/A | $ 432.00 | $ N/A |

2.  *List your employment history for the past two years, most recent employer first. (Gross
    monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| Delmarva Temp Staffing, Inc. | P.O. Box 264 Rehoboth Beach, DE ±19971 | March, 2012–Present | $ 432.00 |

*106*

| Long & Foster Real Estate,Inc | 1235 Quintilio Drive Bear, DE  19701 | March, 2011 to December, 2011 | $    0 |
|---|---|---|---|
| UIC | Dover, DE | to February Sept., 2010-2012 | $60/week |

3.    *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| N/A | | | $ |
| | | | $ |
| | | | $ |

4.    *How much cash do you and your spouse have?* $  15.00

*Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
| WSFS Bank | Savings | $   $75.00 | $ |
| None | | $ | $ |
| None | | $ | $ |

***If you are a prisoner, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.  If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.***

5.    *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $   N/A | (Value) $   N/A | (Value) $ 5000.00 |
| | | Make and year: 1998 Lincoln Town Car |

*107*

| | | Model:  Lincoln Town Car |
|---|---|---|
| | | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $    None | (Value) $    None | (Value) $   None |
| Make and year: | | |
| Model: | | |
| Registration #: | | |

6.    *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| MBNA America | $ $300,000.00 | $    N/A |
| Delmarva Power & Electric | $  11,000-12,000.00 | $    N/A |
| State of Delaware | $ (Whistleblower Funds) | $    N/A |
| | $ | $ |

7.    *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
| N/A | | |
| | | |
| | | |

*108*

8.    *Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

| | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home)<br>    Are real estate taxes included?    Yes    No<br>    Is property insurance included?    Yes    No | $    0<br><br>N | $    N/A |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ 85.91 | $    N/A |
| Home maintenance (repairs and upkeep) | $    45.00 | $    N/A |
| Food    Public Assistance: Food Stamps | $(200.00) | $    N/A |
| Clothing | $ 16.00 | $    N/A |
| Laundry and dry-cleaning | $ 10.00 | $ N/A |
| Medical and dental expenses | $    4.00 | $ N/A |
| Transportation (not including motor vehicle payments) | $ 100.00 | $ N/A |
| Recreation, entertainment, newspapers, magazines, etc. | $    24.00 | $    N/A |
| Insurance (not deducted from wages or included in mortgage payments) | | |
| Homeowner's or renter's: | $    0 | $    N/A |
| Life: | $    0 | $    N/A |
| Health: | $    0 | $    N/A |
| Motor vehicle:    Auto | $ 60.40 | $    N/A |
| Other:    (Real Estate Continuing Ed cal classes to maintain license) | $ 19.000 | $    N/A |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | $    0 | $    N/A |
| Installment payments | | |
| Motor Vehicle: | $    0 | $ N/A |
| Credit card (name): | $    0 | $ N/A |
| Department store (name): | $    0 | $ N/A |
| Other: | $    0 | $    N/A |
| Alimony, maintenance, and support paid to others | $    0 | $ N/A |

*109*

| | | |
|---|---|---|
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ 0 | $ N/A |
| Other (specify): `Real Estate Continuing Ed Classes to maintain license` | $ 19.00 | $ N/A |
| **Total monthly expenses:** | $ 364.31 | $ N/A |

9.  *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

(Yes)    No    If yes, describe on an attached sheet.
`I am expecting to get a full-time job with full-time hours; and/or get back or back to being a real estate agent if I can save up enough money.`

10. *Have you paid    or will you be paying    an attorney any money for services in connection with this case, including the completion of this form?*    Yes    (No)

*If yes, how much?* $ _____
*If yes, state the attorney's name, address, and telephone number:*

11. *Have you paid-or will you be paying-anyone other than an attorney (such as a paralegal or a typist) any money for services in connection with this case, including the completion of this form?*    Yes    (No)

*If yes, how much?* $ _____
*If yes, state the person's name, address, and telephone number:*

12. *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*
`Continue to have outstanding employment issues unresolved; and am on public assistance because of it - not getting hired and having to rely on temporary employment working and being limited to 12 hours per week.`

13. *State the [city and state] of your legal residence.*    `Dover, Delaware`

*Your daytime phone number:* ( `302` ) `264-1895` _____

*Your age:* `57` _____    *Your years of schooling:* `Graduate Degree` _____

*[Last four digits of] your social-security number:* `1404` _____

/ / 0

# CERTIFICATE OF SERVICE

I, Carlet D. Ward, Plaintiff, do hereby certify that on this day, August 20, 2013, I have mailed a

copy of this document within to the following addresses:

James McMackin III, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
(302) 888-5849

U.S. District Court
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE  19801-3570

*Carlet D. Ward*

Carlet D. Ward
201 Voshells Mill Road
Dover, DE  19901
(302) 264-1895

SWORN TO AND SUBSCRIBED before me this __20__ day of __August__, 2013.

*Christie Lee Stamps*

Notary

CHRISTIE LEE STAMPS
NOTARY PUBLIC, STATE OF DELAWARE
MY COMMISSION EXPIRES JULY 17, 2015

The Good Book!

CARLet WARD

# GUIDE TO
# PART-TIME
# EMPLOYMENT



**mbna**

# II. Employment Guidelines

In this section. you'll find information about the important policies that guide our activities.

## EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION

MBNA is an equal opportunity employer. The company recruits. hires. educates. and promotes people in all job categories on the basis of merit only. without regard to race. color. religion. gender. national origin. sexual orientation. age. ancestry. physical or mental disability unrelated to job performance. veteran's status. or any other status protected by applicable federal. local. or state law. MBNA makes every effort to reasonably accommodate qualified people with disabilities. Accommodation requests should be made to your manager. Personnel, or the Affirmative Action office.

Equal opportunity is achieved by affirmative action. and on a voluntary basis. MBNA actively seeks and employs men and women of all races. religions. and national origins. in all areas of the company. Specific efforts are made to ensure that all people are allowed to develop and are given responsibility consistent with their ability and potential.

## HARASSMENT

A fundamental policy of MBNA is that the workplace is for work and should be free from tensions involving matters that do not relate to business. MBNA will not tolerate sexual harassment or harassment of any form (e.g., slurs, offensive stereotypes. or jokes based on gender. race. color. religion. ancestry. national origin. sexual orientation. disability. or other protected categories).

Harassment. including sexual harassment. is prohibited and is a violation of state and federal law. It includes unwelcome advances. requests for sexual favors, sexually motivated physical contact. other verbal or physical conduct. and visual forms of harassment of a sexual nature.

Immediately report any incidents of harassment to your manager. Personnel representative. or Affirmative Action office so that action may be taken. MBNA will promptly and thoroughly investigate all reports of harassment. If an investigation shows a violation of this policy. MBNA will take prompt disciplinary and remedial action designed to prevent further harassment or discrimination. No reprisal. retaliation. or other adverse action will be taken against any person for making a good faith complaint or report of harassment or for cooperating in the investigation of such a complaint or report.

## BUSINESS ETHICS

The continuing success of any company depends largely on the ability of its people to inspire public trust and confidence. MBNA constantly strives to maintain and enhance its reputation for integrity by adhering to the highest standards of business conduct: in many cases. adherence to these standards is also required by law. All MBNA people have the responsibility to conduct themselves in a manner consistent with the company's ethics policy (Personnel Policy No. 606).

MBNA's Statement of Ethics and Responsibility offers guidance regarding some of the common and sensitive situations. but it is only a guide. General questions about the policy or ethics issues can be addressed to your manager or the company's Ethics Office. The Ethics Office is available to provide policy interpretation and confidential guidance on handling ethics-related issues. *If you have any questions about a specific course of conduct, you should refrain from the conduct until you have consulted with your manager or someone in the Ethics Office.*

The following sections highlight the issues covered in MBNA's Statement of Ethics and Responsibility, which is available in its entirety on the Personnel site on MBNA PeopleNet. Additional information is available through the Ethics Office.

### Confidential Information

Confidential. proprietary. and sensitive business information are among MBNA's most significant assets and are critically important to the company's continued success. Because MBNA operates in a highly competitive industry. the protection of this information is vital. MBNA people should always be aware of and try to avoid situations in which confidential. proprietary, or sensitive information could be disclosed to a person who does not have a need to know it.

Defined broadly. confidential information includes anything that gives MBNA an advantage over its competitors. such as information about MBNA's Customers. business practices, programs. strategies. and organizational structure or the people of the company. In general. all media inquiries. as well as verbal and written communications that contain or suggest company endorsement of their contents. should be referred to MBNA's Media Relations department. Confidential business information should not be discussed outside the company. or even within it. except as needed in connection with company business. Questions regarding the handling of confidential information should be addressed to your manager or the Ethics Office.

### Conflict of Interest

MBNA people are expected to conduct their business and outside activities in a manner that avoids *actual or perceived conflicts* with the interests of MBNA or its Customers. Conflicts of interest arise when personal business and outside activities influence. or may be perceived to influence. a person's decisions or judgment in his or her work at MBNA. Potential conflicts are most likely to arise in dealings with Customers. vendors. and other third parties in outside activities. and in situations involving non-MBNA employment. Some examples of situations where a conflict of interest may occur or be perceived include the following:

- Participating in business ventures with Customers or vendors.
- Soliciting or accepting gifts. favors. or anything of value from Customers or vendors. (The policy allows acceptance of gifts up to a value of $100 for commonly recognized events. such as birthdays. holidays. promotions. and weddings.)
- Performing duties similar to your MBNA duties for another organization of similar interest.
- Holding an outside job or engaging in outside business that conflicts with your work performance or duties at MBNA.

In general. any activity. association. or relationship that creates an actual or perceived risk that confidential MBNA information may be compromised. such as the following. should be avoided:

- Being employed by or providing services to another credit card issuer.
- Being employed as a broker. dealer. or agent in the field of insurance. securities transactions. corporate and consumer finance transactions. home equity/second mortgage transactions. or any other field in which MBNA conducts business.
- Engaging in any employment or activity that involves giving advice or exercising judgment based on information acquired primarily from employment at MBNA.
- Engaging in any outside employment or activity that implies the company's sponsorship or support.

Also. it may appear to be a conflict of interest if you share a home (or have some other close personal or business relationship) with an individual who is employed by or provides core services to a competitor of MBNA in its major business lines. including credit cards. insurance. or consumer finance. ("Competitor" is defined as any of the commonly recognized top-20 companies in any of MBNA's major business lines.)

You are obligated to report situations that could constitute or appear to constitute conflicts of interest to your manager or the Ethics Office. MBNA people involved in conflicts of interest could face immediate dismissal and possible criminal prosecution.

# IV. Compensation and Career Development

This section provides an overview of MBNA's compensation philosophy and practices and describes opportunities for developing your career with the company.

## MBNA's COMPENSATION PHILOSOPHY

MBNA's merit-based system of compensation and career development programs are administered fairly and objectively. Your success with the company will depend on the skill, performance, and competence you demonstrate in your position and on your readiness to assume additional responsibilities.

## SALARY GRADE AND RANGE

Each position in the company is assigned a salary grade. The grade is determined by evaluating the skills and responsibilities required by the position and the product or service the position supplies to the organization and our customers. We then compare each position with other positions in the company to assess its impact on the company's operations.

Each grade is assigned a salary range, which is determined by evaluating the salaries paid by similar companies for comparable work. This helps to ensure that the salaries we pay stay competitive and compensate you fairly according to the standards of the marketplace.

### How Your Salary Can Increase

Your salary can increase in several ways. The most common are a merit increase and a promotion.

- **Merit Increase:** Your eligibility for a merit increase and the amount your receive are based on your performance appraisals (see below). Merit increases are not automatic.
- **Promotional Increase:** You will be considered for a promotional increase if you move to a job with a higher salary range.

Please talk to your manager if you have any questions about salary increases.

## PERFORMANCE APPRAISALS

Your manager will meet with you at least once every six months to discuss your job performance. This appraisal gives you and your manager a basis for evaluating your progress and accomplishments as well as an opportunity to identify areas for improvement. It's also a forum for you to discuss your objectives for the coming year and your long-range career goals and plans.

The company expects everyone to strive for excellence. This high level of performance creates a highly competitive environment. The personal drive to excel will be reflected in your performance; people with this drive will be most likely to excel in the company.

Your employment classification determines when you are eligible for a merit increase:

- If you are in a **non-exempt** position, you'll be eligible for a merit increase after six months of service and once a year (from that date) after that, based on your performance.

- If you are in an **exempt** position (either officer or non-officer), you will be eligible for a merit increase in January of each year, based on your previous year's performance.

Please contact your manager if you have any questions about salary increases or performance appraisals.

## THE MBNA JOB POSTING PROGRAM

MBNA is committed to expanding people's opportunities by promoting from within the company whenever possible. With this in mind, the company posts information about job openings each week. Some openings require you to have at least six or nine months of service.

Jobs are posted in common areas at all locations for at least one week. If you are interested in a posted position, please notify your manager and submit a job posting application no later than 5 p.m. on the closing date. Personnel or the hiring department representatives will contact you and may arrange for a confidential interview. The most-qualified candidates will be referred to the next level of management in the hiring department for additional interviews. All candidates will be notified of the final decision. If you are chosen for the new position, you will usually be asked to transfer to the new department within 10 to 15 workdays.

## SERVICE AWARDS

At MBNA, service to the Customer is recognized at key milestones (5, 10, 15 years, and so on) through a variety of recognition and award programs for all full-, prime-, and part-time people. In keeping with the tradition of wearing lapel pins to signify our dedication to Customer satisfaction, the service recognition program awards 14k gold service pins with gems to acknowledge five or more years of service. The gems on the pins reflect people's years of service with MBNA—one emerald for every 5 years or a diamond for 20 years. The company also recognizes each individual's service through an anniversary card program and a bonus Personal Time Off (PTO) program.

## CAREER DEVELOPMENT PROGRAMS

MBNA offers a wide variety of educational and developmental programs that give people the knowledge, encouragement, and skills to achieve superior performance.

- Upon joining MBNA, all full-, prime-, and part-time people participate in New People Orientation. In addition, full and prime-time people participate in subsequent programs during their first year to complete the MBNA Attitude curriculum. These programs include Customer, Community, and Innovation.

- Technical Education is offered for all Customer-contact areas. Beginning programs focus on basic skills and knowledge for success on the job and are followed by additional advanced education sessions.

Your manager or the Education and Development department can provide information on education programs. Education course schedules are published on MBNA PeopleNet.



CAROL M PARAG  *116*

3611

INTERNAL MEMORANDUM

Rec'd
5/6/05

**To:**      The People of MBNA Marketing Systems

**From:**    Lance L. Weaver

**Date:**    April 28, 2005

**Subject:   Equal Opportunity**

The people of MBNA have always had a fundamental commitment to fairness. This is reflected in our company precepts, which state that we are committed to having an inclusive work environment where every single person is given the encouragement, support, and opportunity to be successful. For these reasons, MBNA has been an equal opportunity employer since its inception in 1982.

MBNA affirms its commitment to fairness, equal employment opportunity, and an inclusive work environment with a voluntary affirmative action program. Through this program, MBNA strives to attract a representative population of qualified candidates to join the company, then strives to ensure that their efforts are recognized based on merit.

MBNA also demonstrates its belief in the importance of diverse and inclusive working relationships through a Supplier Diversity Program. Through this program, MBNA broadens its base of suppliers and increases business opportunities in the community by actively seeking out woman- and minority-owned suppliers to meet its corporate procurement goals.

Additionally, MBNA provides reasonable workplace accommodations to qualified MBNA people and applicants with disabilities. Applicants may request accommodation on the employment application, and MBNA people may request accommodation by speaking with their managers, Personnel, Health and Safety Services, or the Office of Equal Employment Opportunity. All accommodation requests that cannot be fulfilled by the business area are referred to Personnel and Health and Safety Services for review and resolution.

Discrimination based on race, color, religion, gender, sexual orientation, national origin, age, physical or mental disability unrelated to job performance, or any other status protected by law is absolutely prohibited. Unprofessional conduct, as well as harassment in any manner or form, is prohibited by MBNA policies and can lead to corrective action, up to and including dismissal. If you are aware of harassment at MBNA, it is important that you bring it to the attention of a manager, Personnel, or the Office of Equal Employment Opportunity.

All complaints or suspicions of harassment or other discriminatory conduct are promptly and thoroughly investigated. No adverse action will be taken against any person who makes a good faith report of harassment or discrimination or who cooperates in an investigation.

Giving everyone an equal opportunity is a business imperative, and the right thing to do—that is the reason for MBNA's policies. By treating everyone fairly, the company is able to ensure the best results for all MBNA people, our Customers, our stockholders, and our community.

For more information on these policies or to discuss related issues, contact your manager; Personnel; MBNA's Equal Employment Officer, Donna Ragan-Granderson, at (302) 432-6562, or MBNA's Equal Employment Advisor, Danlyn Brown, at (302) 432-2831.

*117*

201 Voshell Mill Road
Dover, DE 19901

Date:    September 5, 2005

To:     Human Resources/Personnel
        Attn: Stephanie, Hunt Valley Site
        Via Jane Hahn, Personnel, Dover Site

From:   Carlet D. Ward, Account Specialist
        MBNA Marketing Services
        Dover, DE Site
        Employee Hire Date: 10/12/03

Re:     Original Grievance Complaint – Disparate Treatment
        By Management staff


On about August 30, 2005, I was notified by management, Shannon Williamson and
Personnel, Jane Hahn that I will be placed on corrective action for the next 6 months
effectively immediately and will not be eligible for any incentives during this period
beginning this month. The reason given for the corrective action was due to a listening
monitoring violation as written up by Ms. Susan Lushin in quality assurance. The
pettiness of the violation raised some serious issues as once expressed in a prior
Personnel meeting I had back on May 18th with both Susan Lushin, Jessica Luppold and
LaJeune. I am eligible for an incentive bonus this month in the amount of over $500.00.
I am asthmatic and, I am an African-American woman and have two college degrees.

As a follow-up to a prior complaint I had first expressed back on February 4th of this year,
I expressed a genuine concern about not being able to successfully post for 2 positions in
the Wilmington office in May, 2004; and, not being selected for the manager in training
program which was available by upper management in Wilmington as well. It was
discovered that my two applications for posting was never processed and that I needed
help in getting through MBNA's system to take advantage of any or all opportunities that
were supposed to be afforded to me by the company. I had never been on corrective
action and had successfully made incentive monthly except for in the one month when
there was a sudden shift in management – Lou Simonini and Ms. Kelli Cunningham. No
formal or verbal apologies were ever given for this mistake or, for the missed opportunity

/ 18

Page 2.

to be promoted to a full-time job for which I was qualified for. I was told by Personnel that I should now learn to post on my own without the assistance of management. Prior to that statement made by Personnel, I was told by my prior managers that I needed to go through my team managers first. I used this time to pursue a formal complaint and/or grievance for what was done to me. Nothing ever came out of it.

In April, 2005 after many of our team management staff left the company under the early release program, I was assigned to a new team manager, Jessica Luppold. I had experienced only 2 different team managers since beginning my employment with MBNA and that was with Nicole Piper and Tasha Olfus, both African-American women. Just for the record, the manager in training program application was processed by our new center director, Ms. Kelli Cunningham. On April 8, 2005 while sitting at my workstation, Jessical Luppold, my new manager, was sitting next to me talking with another account specialist and turned towards me and said "Niggers". I turned and asked, "excuse me, what did you say", she said nothing further. And, then she started laughing at me on a regular basis every time I didn't get a sale for the day and, the team that I was on verbally taunted "nothing for you today". After having a disagreement with Ms. Luppold about her monitor sheet on me, we were both motioned to Personnel for a meeting on May 18th. In that meeting I explained to Personnel that I've never seen a team manager get so thrilled about one of her team members not getting sales for the team and, that she was really getting a kick out of it. I thought that was unprofessional conduct and behavior on both the team and team manager and that it didn't represent the overall team spirit effort which needed to be displayed. I also mentioned in that very same meeting that I was being treated disparately by both the management and monitoring staff and, that I was being singled out for excessive monitoring, listening and unfair scrutiny because of my color – they, the team and monitoring staff are Caucasians and, me being black.

My point is simply this, since the new team of staff came on board at the Dover Site, my productivity kept falling, my statistics were way day in comparison to before, I was not being paid all the time I had earned and worked for and, I was out of a bonus in December. I made this concern very clear to Personnel because I didn't want to not be able to reach team and floor plan and goal. On two different occasions, I had to request to be transferred off of my team and onto another just so that I would be able to make plan and, if I have to do it again, there is no other team to go to. Had this issue been addressed and corrected by Personnel or with whoever has the authority to ensure the fair treatment of all of MBNA's employees regardless of race or color or education as well as affording us every opportunity available during my first initial complaint, then this situation would not have exacerbated and reached the point to where it is at today. And, I would not be here today, fighting to stay off of corrective action as well as for the right to my so deserved bonus and incentive.

In my estimation, in spite of what Personnel may say, I believe that I am still being unfairly discriminated against, intentionally targeted and being placed on corrective action and that I am being robbed out of my hard earned bonus afforded to me for which I

119

Page 3.

deserve.    Meanwhile, the excessive monitoring continues with the fear that the new management team's intent is to "stockpile" my personnel file with write-ups from listening so that I could be easily disciplined or eventually terminated.    Again, just to reiterate my first initial and original complaint and concern, there has been no update as to the current status of my original grievance request and complaint from Personnel initiated on February 4th and May 18th.  There has got to be some fair play somewhere because our company policy says there is.

I hope this notification can shed some light as to my position on the floor as an account specialist and, that it would assist you into making a fair and satisfactory decision regarding my requests.  If I can be of further assistance to you, please contact me.

Thank you very much for your cooperation.


Sincerely,

*Carlet D. Ward*

Carlet D. Ward
MBNA Account Specialist

Cc:  Personnel file

# COMPLAINT PROCESSING FORM
## AFFIRMATIVE ACTION OFFICE – MBNA

*The people of MBNA hold a fundamental commitment to fairness. For this reason, MBNA has been an equal opportunity employer since its inception. Discrimination based on race, color, religion, gender, sexual orientation, national origin, age, physical or mental disability unrelated to job performance, or any other status protected by law is absolutely prohibited.*

Name: Carlet D. Ward    People ID: 024733    Telephone (Work): 302-735-1996

Job Title: Account Specialist II    Department: Telesales    Telephone (Home): 302-697-7082
302-697-2616

Full Name & Title of person(s) you believe discriminated against you or treated you unfairly:

| | | |
|---|---|---|
| Kelli Cunningham | Jessica Luppold | Shannon Williamson |
| Lou Simonini | Paula DiGiordano | Jane Hahn |
| Dawn Warman | Susan Lushin | LaJeune Adams |
| Former Secretary | | |

Date(s) of discriminatory action or unfair treatment:
Please see the attached sheets

Basis of discrimination or unfair treatment:

[X] Race    [X] Color    [ ] Sex/Gender    [ ] National Origin    [ ] Religion

[X] Age [X] Disability    [ ] Sexual Harassment    [X] Other  Educational Background

Explain why you feel you were discriminated against or treated unfairly and include your desired outcome.

Please see the attached  sheets for detailed description/explanation

Based on race, color, age and disability, I was unfairly discriminated in employment, promotion opportunities and incentive bonuses eligibility.

Please also see attached letter dated 09/05/05

[X] Additional sheets attached

Complainant's Signature: *Carlet D. Ward*    Date: 9/16/05

*121*

September 16, 2005
Complaint Process Form/
Affirmative Action Office – MBNA
Page 2.

On or about May 1, 2004, I was denied an opportunity to post and apply for the Marketing Program Manager position for the Delaware region.

On or about May 1, 2004, I was denied the opportunity to post and apply for the PIN Coordinator, II position available at the Wilmington office.

On or about February 2, 2005, I was turned down as a candidate for the position of Manager in Training program available via upper management.

On or about February 4, 2005, I was denied a request for a grievance procedure for being discriminated again during an application procedure that was never processed.

On or about February 4, 2005, I was denied an apology from Personnel for the mishandling of my application procedure.

On or about March 15, 2005, our team manager, Tasha Olfus, an African-American woman, confirmed that sh would be leaving on the 31st under the early release program at our regular team meeting so, I asked at that meeting, if her replacement would be another manager of color to keep things in balance.

On April 1, our center received a new staff of managers who were all Caucasians for the day shift. Our new Center Director came on board in around October, 2004.

On April 1, 2005, I was assigned to Jessica Luppold's team.

On or about April 1, 2005, I was retaliated against by management, team and new manager, Jessica Luppold v verbal harassment.

On April 8, 2005, I was verbally called a "Nigger" by my team manager, Jessica Luppold.

On May 18, 2005, at a face-to-face meeting about a confrontation Jessica and I had regarding a monitoring sheet she had written-up. The meeting addressed Jessica, her name calling and behavior towards me, I also indicated to personnel that I believe that I am being disparately treated by both the management and the monitoring staff who are all white/Caucasians by race and color and that I was being unfairly scrutinized by this staff via excessive monitoring and listening.

On or about May 18, 2005, I overheard management state that "it is her word against ours, so, we'll just start taping the monitoring sessions."

On May 18, 2005, I requested to be and was transferred off of Jessica Luppold's team and reassigned to anoth new team manager and caucasian, Amy Fostick's team.

On May 18, 2005, I also indicated to Personnel in that same meeting that my productivity had fallen as well as my performance in comparison to previous performance before the new changeover in staffing came on board I also indicated that they were some inconsistencies in my statistics, such as incorrect figures.

On July 26, 2005, center director, Kelli Cunningham announced that we will be going back on credit cards a that she have the names of the individuals who will be assigned to do it.

On July 27, 2005, I asked Amy Bostick if I could go and do credit cards because my performance and productivity was still not up to par.

On August 3, 2005, I was assigned to credit cards and had to go to another team managed by Shannon Williamson, a Caucasian woman.

On August 26, 2005, I was called into a monitoring meeting with Susan Lushin and Shannon Williamson regarding comments made after customer hung up on the phone for which Ms. Lushin was listening to, recording, and writing up.

On August 30, 2005, I was called into a meeting to speak with Personnel by my team manager, Shannon Williamson regarding being placed on corrective action for the reasons given from the August 26th meeting a to inform me that I would not be eligible to receive my bonus incentive for the month of August. I refused to sign corrective action paperwork in protest of unfairly being scrutinized and discriminated against.

On September 9, 2005, a follow-up meeting was held with a woman who identified herself as Stephanie, another Caucasian woman, from the Hunt Valley's office and who is in charge of telesales Personnel.

On September 14, 2005, a telephone meeting was held with Affirmative Action Director, Ms. Danlyn Brown discuss discrimination complaint procedures.

Because of my race, color, age, disability and educational background, I was unfairly treated and discriminate against in employment, promotion opportunities and bonus incentives eligibility. I was also unfairly scrutiniz and monitored excessively because of my race and color and, on numerous occasions I was not being paid the hours that I was working and/or in a timely fashion.

The outcome desired would include comparable pay for the jobs I was denied the opportunity to apply for as well compensatory damages for the injury suffered by these discriminatory acts and, any or all back wages, incentives owed to me in my position as an Account Specialist II.

*123*

PRINTED ON: ░░

## BY REPRESENTATIVE

REP: WARD, CARLET - 024733    CURRENT MANAGER: TMEDLIN

OUTWARD DATA

| SOURCE CODE | PROGRAM NAME | HOURS | PROD TIME SALES | REP SPH | PEER SPH | % OF PEER SPH | OUTWARD PAYOUT | ELIG BT ACPT | ELIG BT CLOSE | BT SALE RATIO | BT PEER | BT % OF PEER | BT PAYOUT | TIER1 PAYOUT | POTENTIAL TOTAL PAYOUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| H0VU | APP02 WP ALLIANCE DEVELOP | 5.56 | 86.4% | 7 | 1.26 | 0.50 | 251.26% | 3 | 4 | 0.75 | 0.24 | 313.68% | | $ 0.00 | |
| H1VK | APP07 WP SIE INVESTMENT P | 0.72 | 63.3% | 1 | 1.40 | 0.35 | 399.49% | 1 | 1 | 1.00 | 0.29 | 350.02% | | $ 0.00 | |
| H1X4 | 90DY APP07 WP SIE INVESTM | 0.18 | 97.3% | 0 | 0.00 | 0.95 | 0.00% | 0 | 0 | 0.00 | 0.33 | 0.00% | | $ 0.00 | |
| KA8I | APP05 SMITHSONIAN ICB+ART | 0.17 | 84.6% | 0 | 0.00 | 0.30 | 0.00% | 0 | 0 | 0.00 | 0.33 | 0.00% | | $ 0.00 | |
| KC1Z | WP NEA AUGUST NPA IS KC11 | 0.11 | 95.9% | 0 | 0.00 | 0.46 | 0.00% | 0 | 0 | 0.00 | 0.33 | 0.00% | | $ 0.00 | |
| KDM2 | WP ARMD FRCS CHC F | 0.05 | 96.1% | 0 | 0.00 | 0.51 | 0.00% | 0 | 0 | 0.00 | 0.00 | 0.00% | | $ 0.00 | |
| KDN3 | WP ARMD FRCS CHC Y | 0.25 | 93.9% | 1 | 3.94 | 0.78 | 507.54% | 1 | 1 | 0.00 | 0.00 | 0.00% | | $ 0.00 | |
| KEA1 | CHC WE M & T BANK Y | 0.27 | 97.0% | 1 | 3.65 | 0.73 | 498.84% | 1 | 1 | 0.00 | 0.00 | 0.00% | | $ 0.00 | |
| KEAC | CRC BASS PRO SHOPS OUTDOO | 0.70 | 91.3% | 0 | 0.00 | 0.60 | 0.00% | 0 | 1 | 0.16 | 0.16 | 0.00% | | $ 0.00 | |
| KE3F | 90DY CRC BASS PRO SHOPS O | 0.47 | 95.0% | 1 | 2.15 | 0.60 | 360.01% | 1 | 1 | 0.00 | 0.00 | 0.00% | | $ 0.00 | |
| KE57 | WP CRC NEA F | 1.04 | 89.8% | 2 | 1.92 | 0.83 | 230.11% | 2 | 2 | 0.00 | 0.11 | 0.00% | | $ 0.00 | |
| KIT8 | MRACT AUGUST CHOICE ICB Y | 1.15 | 64.2% | 1 | 0.87 | 0.56 | 154.64% | 0 | 1 | 0.00 | 0.03 | 0.00% | | $ 0.00 | |
| KKZQ | WP KAPPA DELTA PI INTRNTN | 0.12 | 100.0% | 0 | 0.00 | 0.74 | 0.00% | 0 | 0 | 0.00 | 0.00 | 0.00% | | $ 0.00 | |
| KMD9 | APP47 WP REED ELSVR BIZ | 3.89 | 93.5% | 5 | 1.28 | 0.48 | 267.67% | 4 | 4 | 0.00 | 0.10 | 0.00% | | $ 5.84 | |
| KMO0 | CM SEPT NL COUNCIL OF TEA | 0.40 | 91.5% | 0 | 0.00 | 0.81 | 0.00% | 0 | 0 | 0.00 | 0.10 | 0.00% | | $ 0.00 | |
| KN60 | APP03 ELITE REWRDS BUDGET | 0.66 | 86.8% | 1 | 1.52 | 0.35 | 435.53% | 0 | 0 | 0.00 | 0.09 | 0.00% | | $ 0.00 | |
| KOJ2 | APP03 WP NE PREF PROF BIS | 3.54 | 84.9% | 4 | 1.13 | 0.74 | 153.53% | 1 | 3 | 0.33 | 0.18 | 182.03% | | $ 5.31 | |
| KOOP | APP07 WP SIE INVEST PROF | 2.85 | 77.7% | 2 | 0.70 | 0.46 | 151.96% | 0 | 0 | 0.00 | 0.23 | 0.00% | | $ 0.00 | |

| TOTAL OUTWARD | | 22.13 | 85.4% | 26 | 1.17 | 0.56 | 210.11% | $158.78 | 5 | 18 | 0.28 | 0.14 | 205.32% | $ 25.00 | $ 11.15 | $194.93 |

This report is intended to give the representative an estimate of month-to-date incentive.
This report is in no way to be used as a final guarantee of incentive payout for a month. Each representative
must still meet the requirements as listed below. All incentives are subject to month end review before a
payout is made. If you have any questions, contact your manager.

DISQUALIFIERS
=============
[ ] % of Peer SPH      : 85.00%
[ ] % of BT Peer       : 85.00%
[ ] Productive Time    : 85.00%

ACTUAL PAYOUTS
==============
    OUTWARD: $158.78
        BT: $ 25.00
TIER 1 BONUS: $ 11.15
---------------------
PAYOUT TOTAL: $194.93

1579.20/18 = 87.73

151

TE: BT Ratios are adjusted to exclude eligible sales from Cross Sell calculations. All accepts are included.
CONFIDENTIAL - DO NOT COPY, DISTRIBUTE OR REMOVE

og: inc_rpt.4gl

124

PRINTED ON: Ob...

BY REPRESENTATIVE

REP: WARD, CARLET - 024733    CURRENT MANAGER: SMILLIA4

OUTWARD DATA

| SOURCE CODE | PROGRAM NAME | HOURS | PROD TIME | SALES | REP SPH | PEER SPH | % OF PEER SPH | OUTWARD PAYOUT | ELIG BT ACPT | ELIG BT SALE | BT CLOSE RATIO | BT PEER | BT % OF PEER | BT PAYOUT | TIER1 PAYOUT | POTENTIAL TOTAL PAYOUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G17R | AMEX RWRDS ASME MMBRS, EXP | 3.01 | 81.1% | 3 | 1.00 | 0.58 | 172.11% | | 1 | 3 | 0.33 | 0.26 | 125.92% | $ 0.00 | | $ 0.00 |
| G1UV | WP AMERICAN SOCIETY OF CI | 0.10 | 74.1% | | | 0.41 | 0.00% | | 1 | 3 | 0.00 | 0.27 | 0.00% | $ 0.00 | | $ 0.00 |
| G4D1 | APP03 WP WACHOVIA BANK SE | 0.05 | 87.6% | | | 0.65 | 0.00% | | 0 | 1 | 0.00 | 0.15 | 0.00% | $ 0.00 | | $ 0.00 |
| G4D8 | APP4-6 WP WACHOVIA BANK S | 1.64 | 96.0% | 2 | 1.22 | 0.98 | 123.89% | | 0 | 1 | 0.00 | 0.24 | 0.00% | $ 0.00 | | $ 0.00 |
| G4G5 | 05.4 TRIG1 AMEX NON RWRDS | 11.51 | 89.1% | 7 | 0.61 | 0.47 | 129.74% | | 3 | 7 | 0.43 | 0.24 | 178.96% | $ 0.00 | | $ 0.00 |
| G4HD | APP01 AMEX RWRDS ADVANSTA | 2.18 | 77.8% | 1 | 0.46 | 0.43 | 107.62% | | 0 | 1 | 0.00 | 0.17 | 0.00% | $ 0.00 | | $ 0.00 |
| G4HE | APP01 AMEX RWRDS ADVANSTA | 0.20 | 74.5% | | 0.00 | 0.39 | 0.00% | | 2 | 4 | 0.50 | 0.24 | 206.27% | $ 0.00 | | $ 0.00 |
| G5H1 | APP07 AMEX RWRDS COOKING | 6.29 | 84.4% | 4 | 0.64 | 0.47 | 135.05% | | 0 | 2 | 0.00 | 0.22 | 0.00% | $ 0.00 | | $ 0.00 |
| G5H2 | CM JULY APP07 AMEX BUSINE | 0.58 | 87.2% | | 0.00 | 0.69 | 0.00% | | 1 | 4 | 0.25 | 0.26 | 97.81% | $ 0.00 | | $ 0.00 |
| G5H5 | APP07 AMEX RWRDS SOUTHERN | 6.26 | 91.3% | 7 | 1.12 | 0.48 | 232.71% | | 1 | 1 | 1.00 | 0.32 | 312.50% | $ 0.00 | | $ 0.00 |
| G5H6 | APP07 AMEX RWRDS COASTAL | 2.15 | 89.3% | 2 | 0.93 | 0.38 | 246.89% | | 1 | 1 | 0.00 | 0.32 | 0.00% | $ 0.00 | | $ 0.00 |
| G5IA | APP07 AMEX RWRDS SOUTHERN | 0.91 | 94.9% | 1 | 1.10 | 0.50 | 221.33% | | 1 | 1 | 0.00 | 0.27 | 0.00% | $ 0.00 | | $ 0.00 |
| G5W1 | APP03 AMEX RWRDS NATIONAL | 1.13 | 94.7% | | 0.00 | 0.48 | 0.00% | | 0 | 0 | 0.00 | 0.14 | 0.00% | $ 0.00 | | $ 0.00 |
| G7N0 | AMEX RWRDS AMERICAN PHYSI | 0.18 | 99.5% | | 0.00 | 0.30 | 0.00% | | 0 | 0 | 0.00 | 0.33 | 0.00% | $ 0.00 | | $ 0.00 |
| GL9C | AMEX RWRDS AMERICAN SOC C | 0.83 | 94.3% | 1 | 1.20 | 0.58 | 207.77% | | 0 | 1 | 0.00 | 0.21 | 0.00% | $ 0.00 | | $ 0.00 |
| GL9G | WP AMERICAN ASSOC RESP CA | 0.43 | 95.7% | 1 | 2.18 | 0.75 | 308.93% | | 0 | 0 | 0.00 | 0.00 | 0.00% | $ 0.00 | | $ 0.00 |
| GUNN | 05.3 WP AFFMAX MC 7.9 13. | 2.00 | 95.0% | 1 | 0.50 | 0.26 | 190.16% | | 1 | 1 | 0.00 | 0.10 | 0.00% | $ 0.00 | | $ 0.00 |
| LF10 | 05.4 AFFMAX VISA NON RWRD | 2.31 | 93.0% | 3 | 1.30 | 0.82 | 158.13% | | 1 | 3 | 0.33 | 0.38 | 86.82% | $ 0.00 | | $ 0.00 |
| **TOTAL OUTWARD** | | 41.75 | 88.7% | 33 | 0.79 | 0.51 | 154.98% | $229.59 | 9 | 27 | 0.33 | 0.25 | 131.69% | $ 90.00 | $ 0.00 | $319.59 |

92.95

This report is intended to give the representative an estimate of month-to-date incentive.
This report is in no way to be used as a final guarantee of incentive payout for a month. Each representative must still meet the requirements as listed below. All incentives are subject to month end review before a payout is made. If you have any questions, contact your manager.

DISQUALIFIERS
[ ] % of Peer SPH    : 85.00%
[ ] % of BT Peer     : 85.00%
[ ] Productive Time  : 85.00%

ACTUAL PAYOUTS
OUTWARD: $229.59
    BT: $ 90.00
---
PAYOUT TOTAL: $319.59

*looking good Carlet!*
*Keep up the great job!*

NOTE: BT Ratios are adjusted to exclude eligible sales from Cross Sell calculations. All accepts are included.
prog: inc_rpt.4gl
CONFIDENTIAL - DO NOT COPY, DISTRIBUTE OR REMOVE

*125*

U.S. District Court
U.S. District Court - Massachusetts (Springfield)

CIVIL DOCKET FOR CASE #: 92-CV-30170

Ward, et al v. Albany, et al                            Filed: 07/30/92
Assigned to: Senior Judge Frank H. Freedman
Demand: $9,999,000                          Nature of Suit:  440
Lead Docket: None                           Jurisdiction: US Defendant
Dkt# in other court: None

Cause: 42:1983 Civil Rights Act


CARLET D. WARD                    Carlet D. Ward
        Plaintiff                 [COR LD NTC] [PRO SE]
                                  289 Conway Street
                                  Greenfield, MA 01301
                                  413-543-8071


LESHAWNE T. PERRY                 LeShawne T. Perry
        Plaintiff                 [COR LD NTC] [PRO SE]
                                  289 Conway Street
                                  Greenfield, MA 01301
                                  413-543-8071


     v.


TIM ALBANY, Massachusetts
State Police Officer
        Defendant


UNITED STATES DEPARTMENT OF
JUSTICE
        Defendant


U. S. FEDERAL BUREAU OF
INVESTIGATION
        Defendant

/26

Proceedings include all events.
3:92cv30170 Ward, et al v. Albany, et al                    CLOSED

CARLET D. WARD; LESHAWNE T. PERRY

                Plaintiff


    v.

TIM ALBANY, Massachusetts State Police Officer; UNITED
STATES DEPARTMENT OF JUSTICE; U. S. FEDERAL BUREAU OF
INVESTIGATION

                Defendant

*127*

U.S. District Court
U.S. District Court - Massachusetts (Springfield)

CIVIL DOCKET FOR CASE #: 92-CV-30159

Ward, et al v. Hampden Probate Ct., et al          Filed: 07/15/92
Assigned to: Senior Judge Frank H. Freedman
Demand: $999,000                          Nature of Suit: 440
Lead Docket: None                         Jurisdiction: Federal Question
Dkt# in other court: None

Cause: 28:1331 Fed. Question: Civil Rights Violation


CARLET D. WARD                    Carlet D. Ward
      Plaintiff                   [COR LD NTC] [PRO SE]
                                  289 Conway Street
                                  Greenfield, MA 01301
                                  413-543-8071


LESHAWNE T. PERRY                 LeShawne T. Perry
      Plaintiff                   [COR LD NTC] [PRO SE]
                                  289 Conway Street
                                  Greenfield, MA 01301
                                  413-543-8071


    v.


HAMPDEN COUNTY FAMILY &           Mark H. Bluver
PROBATE COURT                     [COR LD NTC]
      Defendant                   Shatz, Schwartz & Fentin
                                  1441 Main Street
                                  Springfield, MA 01075
                                  413-737-1131


HAMPDEN COUNTY DISTRICT           Mark H. Bluver
ATTORNEY'S OFFICE                 (See above)
      Defendant                   [COR LD NTC]


MASS. ATTORNEY GENERAL'S          Mark H. Bluver
OFFICE                            (See above)
      Defendant                   [COR LD NTC]


MASSACHUSETTS COMMISSION          Mark H. Bluver
AGAINST DISCRIMINATION            (See above)
      Defendant                   [COR LD NTC]


Docket as of February 12, 2001 10:42 am              Page 1

/28

Proceedings include all events.
3:92cv30159 Ward, et al v. Hampden Probate Ct., et al          CLOSED

CARLET D. WARD; LESHAWNE T. PERRY

             Plaintiff


   v.

HAMPDEN COUNTY FAMILY & PROBATE COURT; HAMPDEN COUNTY
DISTRICT ATTORNEY'S OFFICE; MASS. ATTORNEY GENERAL'S OFFICE;
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

             Defendant

# Executives Announce Plans to Leave Company

Some MBNA executives have decided that they will retire or pursue new opportunities after they help the company successfully plan the transition with Bank of America. The following executives have decided to retire or pursue new opportunities when the merger with Bank of America closes at year-end. They will continue in their current roles until the merger consummation, and each is fully committed to assisting in the transition process.

• Gregg Bacchieri, group executive for U.S. Credit Card Business Operations, including Credit, Loss Prevention, Portfolio Management, Customer Satisfaction, and Customer Marketing. Bacchieri has been with MBNA for nearly his entire career. He joined Maryland National Bank in 1978 as a collection manager and four years later was a member of the team that established MBNA America in Delaware. He has led nearly every area of the company and held top management positions in Consumer Finance, Marketing, and Personnel. "Gregg's personal style and dedication to the people of the company permeate nearly every aspect of our business," said Bruce Hammonds.

• Doug Denton, MBNA's chief technology officer. Denton joined the company in 1989 after serving as operations executive for MNC Financial Corporation and MCorp. At MBNA, he served as a top executive within MBNA Technology and helped develop the world-class systems enabling MBNA's millions of Customers to make hundreds of millions of transactions with almost no downtime. "Under his leadership, MBNA expanded its systems to Europe through the Strategic Systems Expansion project," Hammonds said.

• Louis Freeh, general counsel. Freeh joined MBNA in 2001 and oversaw the bank's Legal, Government and Corporate Affairs departments, Special Investigative Unit, and Ethics Office. He came to the company after a distinguished career in government service, including eight years as FBI Director. "Louis' leadership in government and legal affairs has been outstanding," said Hammonds.

• Jack Hewes, group executive for Consumer Finance, including Unsecured, Business Lending, Mortgage, Aircraft, and Practice Finance. Previous to this, Hewes oversaw Credit, Risk Detection and Fraud and Marketing, Credit, and Loss Prevention in the Consumer Finance Division. He joined MBNA in 1985. "Jack helped define the company's judgmental lending strategies," said Hammonds. "Under his leadership, our unsecured lending business grew into a multi-billion dollar operation."

• John W. Scheflen, chief risk officer. As a private attorney, Scheflen was instrumental in helping MBNA to become an independent company in 1991. He then joined MBNA in 1992 as general counsel and corporate secretary. "Over the years, he helped MBNA develop and implement its world-class corporate governance policies," said Hammonds. As chief risk officer, he was most

     

*Clockwise from top left: Gregg Bacchieri, Doug Denton, Louis Freeh, Ken Vecchione, John W. Scheflen, and Jack Hewes*

recently responsible for Risk Management, including Compliance, Information Security, Operational Risk Management, Portfolio Risk Management, and Basel.

• Ken Vecchione, MBNA Corpora-

tion chief financial officer. Vecchione joined MBNA in 1998 as division head of Finance, responsible for Accounting, Corporate and Strategic Planning, Treasury and Financial Operations, Investor and Media Relations, Mergers and Acquisitions, and Financial Planning throughout the company. He previously served as chief financial officer of AT&T Universal Card Services. "Ken's leadership in finance helped MBNA to establish a nearly unmatched record of financial performance among S&P 500 companies," said Hammonds.

"These leaders have made immeasurable contributions to our company over many, many years, and we are a better company because of their efforts. We will miss their dedication and talents. We offer our sincere thanks and wish them all the very best as they pursue the next phases of their careers and lives," Hammonds said.

## Smaller Affinity Groups Benefit From Extra Effort

MBNA Europe's Partnership Marketing department in Chester has developed a range of new initiatives that add value to the interaction it has with its smaller affinity partners.

"We recognize the importance of maintaining strong relationships with our smaller affinity partners, and we want to demonstrate our commitment to them by providing the best products and services to meet their needs," said Louise Testa, head of Partnership Marketing.

Since the beginning of 2005, the department has introduced market-

ing programs that provide significant benefits for both MBNA and its affinity partners. For example, a change to the take-ones format has resulted in significant savings. Printing stocks of direct mail three months in advance has led to cost efficiencies, and an increase in the frequency of print runs for take-ones and inserts has enabled MBNA to take advantage of more group-generated opportunities.

Other successful initiatives include the launch of new marketing channels including outbound telemarketing and door-drops, both of which

have already provided positive results.

The introduction of a range of group contact programs has made it easier and more efficient for the affinity groups to do business with MBNA. The setting up of a freepost (postage paid) address is just one example. Another is a Frequently Asked Questions document, which is circulated quarterly to more than 650 affinity groups.

"We are committed to our affinity partners and believe that these new initiatives will enhance our relationships with them," said Testa.

Case: 13-3562    Document: 003111533029    Page: 139    Date Filed: 02/12/2014
Black bag operation - Wikipedia, the free encyclopedia    Page 1 of 2

/ 30

# Black bag operation

From Wikipedia, the free encyclopedia
(Redirected from Black bag jobs)

**Black bag operations** (or **black bag jobs**) are covert or clandestine entries into structures to obtain information for human intelligence operations.[1] This usually entails breaking and entering into denied areas. Some of the tactics, techniques and procedures associated with black bag operations are: lock picking, safe cracking, key impressions, fingerprinting, photography, electronic surveillance (including audio and video surveillance), mail manipulation (flaps and seals), forgery, and a host of other related skills. The term "black bag" refers to the little black bag in which burglars carry their tools.[2] "The CIA remains responsible for conducting these highly classified operations overseas, while the Federal Bureau of Investigation (FBI) performs the exact same function inside the U.S. and its territories."[2]

## Contents

- 1 Use by the FBI
- 2 Use by the CIA
- 3 Use by other governments
- 4 See also
- 5 References
- 6 External links

## Use by the FBI

In black bag operations, Federal Bureau of Investigation (FBI) agents illegally entered offices of targeted individuals and organizations, and photographed information found in their records. This practice was used by the FBI from 1942 until 1967. In July 1966, FBI Director J. Edgar Hoover ordered the practice discontinued.[3] The use of "black bag jobs" by the FBI was declared unconstitutional by the United States Supreme Court on 19 June 1972 in the Plamondon case, *United States v. U.S. District Court*, 407 U.S. 297. The FBI still carries out numerous "black bag" entry-and-search missions, in which the search is covert and the target of the investigation is not informed that the search took place. If the investigation involves a criminal matter a judicial warrant is required; in national security cases the operation must be approved by a secret body called the Foreign Intelligence Surveillance Court.[4]

## Use by the CIA

The CIA has used black-bag operations to steal cryptography and other secrets from foreign government offices outside the United States. The practice dates back at least as far as 1916.[2]

## Use by other governments

The British, Israeli, Russian, and other intelligence agencies are known to use black-bag operations to

# COINTELPRO

From Wikipedia, the free encyclopedia

**COINTELPRO** (an acronym for **CO**unter **INTEL**ligence **PRO**gram) was a series of covert, and at times illegal,[1] projects conducted by the United States Federal Bureau of Investigation (FBI) aimed at surveying, infiltrating, discrediting, and disrupting domestic political organizations.[2] National Security Agency operation Project MINARET targeted the personal communications of leading Americans, including Senators Frank Church and Howard Baker, civil rights leaders, including Dr. Martin Luther King, Eber Perez, journalists and athletes who criticized the Vietnam War.[3][4]

The FBI has used covert operations against domestic political groups since its inception; however, covert operations under the official COINTELPRO label took place between 1956 and 1971.[5] COINTELPRO tactics are still used to this day, and have been alleged to include discrediting targets through psychological warfare; smearing individuals and groups using forged documents and by planting false reports in the media; harassment; wrongful imprisonment; and illegal violence, including assassination.[6][7][8] The FBI's stated motivation was "protecting national security, preventing violence, and maintaining the existing social and political order."[9]

FBI records show that 85% of COINTELPRO resources targeted groups and individuals that the FBI deemed "subversive",[10] including communist and socialist organizations; organizations and individuals associated with the Civil Rights Movement, including Rev. Dr. Martin Luther King, Jr. and others associated with the Southern Christian Leadership Conference, the National Association for the Advancement of Colored People, and the Congress of Racial Equality and other civil rights organizations; black nationalist groups; the American Indian Movement; a broad range of organizations labeled "New Left", including Students for a Democratic Society and the Weathermen; almost all groups protesting the Vietnam War, as well as individual student demonstrators with no group affiliation; the National Lawyers Guild; organizations and individuals associated with the women's rights movement; nationalist groups such as those seeking independence for Puerto Rico, United Ireland, and Cuban exile movements including Orlando Bosch's Cuban Power and the Cuban Nationalist Movement; and additional notable Americans —even Albert Einstein, who was a socialist and a member of several civil rights groups, came under FBI surveillance during the years just before COINTELPRO's official inauguration.[11] The remaining 15% of COINTELPRO resources were expended to marginalize and subvert white hate groups, including the Ku Klux Klan and the National States' Rights Party.[11]

FBI Director J. Edgar Hoover issued directives governing COINTELPRO, ordering FBI agents to "expose, disrupt, misdirect, discredit, or otherwise neutralize" the activities of these movements and their leaders.[13][14] Under Hoover, the agent in charge of COINTELPRO was William C. Sullivan.[15] Attorney General Robert F. Kennedy personally authorized some of these programs.[16] Kennedy learned that he was also a target of FBI surveillance.[citation needed]



COINTELPRO memo proposing a plan to expose the pregnancy of actress Jean Seberg, a financial supporter of the Black Panther Party, hoping to *"possibly cause her embarrassment or tarnish her image with the general public"*. Covert campaigns to publicly discredit activists and destroy their interpersonal relationships were a common tactic used by COINTELPRO agents.

## Contents

- 1 History
  - 1.1 Program exposed
- 2 Intended effects
- 3 Range of targets
- 4 Methods
- 5 Illegal surveillance
- 6 Post-COINTELPRO operations
- 7 See also
- 8 References
- 9 Further reading
  - 9.1 Books
  - 9.2 Articles
  - 9.3 FBI Files
  - 9.4 U.S. government reports
- 10 External links
  - 10.1 U.S. government reports

## History

The FBI engaged in political repression almost from the time of the agency's inception in 1908, at a time of widespread social disruption due to anarchists and labor movements. Beginning in the 1930s, antecedents to COINTELPRO operated during the Franklin D. Roosevelt and Harry S. Truman administrations. Centralized operations under COINTELPRO officially began in August 1956 with a program designed to "increase factionalism, cause disruption and win defections" inside the Communist Party U.S.A. (CPUSA). Tactics included anonymous phone calls, IRS audits, and the creation of documents that would divide American communists internally.[17] An October 1956 memo from Hoover reclassified the FBI's ongoing surveillance of black leaders, including it within COINTELPRO, with the justification that the movement was infiltrated by communists.[18] When the Southern Christian Leadership Conference (SCLC) was founded in 1957, the FBI began to monitor and target the group almost immediately, focusing particularly on Bayard Rustin, Stanley Levison, and Rev. Martin Luther King, Jr.[19]

After the 1963 March on Washington for Jobs and Freedom, Hoover singled out King as a major target for COINTELPRO. Under pressure from Hoover to focus on King, Sullivan wrote:

> "In the light of King's powerful demagogic speech. . . . We must mark him now, if we have not done so before, as the most dangerous Negro of the future in this nation from the standpoint of communism, the Negro, and national security."[20]

Soon after, the FBI was systematically bugging King's home and his hotel rooms.[21]

Amidst the urban unrest of July–August 1967, the FBI began "COINTELPRO–BLACK HATE", which focused on King and the SCLC as well as the Student Nonviolent Coordinating Committee (SNCC) and its leader Stokely Carmichael. BLACK HATE established the Ghetto Informant Program and instructed 23 FBI offices to "disrupt, misdirect, discredit, or otherwise neutralize the activities of black nationalist hate type organizations".[22] This program coincided with a broader federal effort to prepare military responses for urban riots, and began increased collaboration between the FBI, Central Intelligence Agency, National Security Agency, and the Department of Defense.[23] A particular target was the Poor People's Campaign, a national effort organized by King and the SCLC to occupy Washington, D.C. The FBI monitored and disrupted the campaign on a national level, while using targeted smear tactics locally to undermine support for the march.[24]

COINTELPRO–NEW LEFT was created in April 1968, in the wake of Martin Luther King, Jr.'s assassination in Memphis and mass student protests at Columbia University.[25]

The program ultimately encompassed disruption of the Socialist Workers Party (1961), the Ku Klux Klan (1964), the Nation of Islam, the Black Panther Party (1967), and the entire New Left social/political movement, which included antiwar, community, and religious groups (1968). A later investigation by the Senate's Church Committee (see below) stated that "COINTELPRO began in 1956, in part because of frustration with Supreme Court rulings limiting the Government's power to proceed overtly against dissident groups...".[26] Official congressional committees and several court cases[27] have concluded that COINTELPRO operations against communist and socialist groups exceeded statutory limits on FBI activity and violated constitutional guarantees of freedom of speech and association.[1]

### Program exposed

The program was successfully kept secret until 1971, when the Citizens' Commission to Investigate the FBI burglarized an FBI field office in Media, Pennsylvania, took several dossiers, and exposed the program by passing this material to news agencies. Many news organizations initially refused to publish the information. Within the year, Director J. Edgar Hoover declared that the centralized COINTELPRO was over, and that all future counterintelligence operations would be handled on a case-by-case basis.[28][29]

Additional documents were revealed in the course of separate lawsuits filed against the FBI by NBC correspondent Carl Stern, the Socialist Workers Party, and a number of other groups. In 1976 the Select Committee to Study Governmental Operations with Respect to Intelligence Activities of the United States Senate, commonly referred to as the "Church Committee" for its chairman, Senator Frank Church of Idaho, launched a major investigation of the FBI and COINTELPRO. Journalists and historians speculate that the government has not released many documents related to the program, and many released documents have been partly, or entirely, redacted.

Since the conclusion of centralized COINTELPRO operations in 1971, FBI counterintelligence operations have been handled on a "case-by-case basis"; however allegations of improper political repression continue.[30][31]

The Final Report of the Select Committee castigated conduct of the intelligence community in its domestic operations (including COINTELPRO) in no uncertain terms:

The Committee finds that the domestic activities of the intelligence community at times violated specific statutory prohibitions and infringed the constitutional rights of American citizens. The legal questions involved in intelligence programs were often not considered. On other occasions, they were intentionally disregarded in the belief that because the programs served the "national security" the law did not apply. While intelligence officers on occasion failed to disclose to their superiors programs which were illegal or of questionable legality, the Committee finds that the most serious breaches of duty were those of senior officials, who were responsible for controlling intelligence activities and generally failed to assure compliance with the law.[1]

Many of the techniques used would be intolerable in a democratic society even if all of the targets had been involved in violent activity, but COINTELPRO went far beyond that...the Bureau conducted a sophisticated vigilante operation aimed squarely at preventing the exercise of First Amendment rights of speech and association, on the theory that preventing the growth of dangerous groups and the propagation of dangerous ideas would protect the national security and deter violence.[26]

The Church Committee documented a history of the FBI exercising political repression as far back as World War I, through the 1920s, when agents were charged with rounding up "anarchists and revolutionaries" for deportation. The domestic operations were increased against political groups from 1936 through 1976.

## Intended effects

The intended effect of the FBI's COINTELPRO was to "expose, disrupt, misdirect, or otherwise neutralize" groups that the FBI officials believed were "subversive"[32] by instructing FBI field operatives to:[33]

1. create a negative public image for target groups (e.g. by surveiling activists, and releasing negative personal information to the public)
2. break down internal organization
3. create dissension between groups
4. restrict access to public resources
5. restrict the ability to organize protests
6. restrict the ability of individuals to participate in group activities

## Range of targets

In an interview with the BBC's Andrew Marr, Noam Chomsky, a MIT professor of linguistics and political activist, spoke about the purpose and the targets of COINTELPRO, saying,

"COINTELPRO was a program of subversion carried out not by a couple of petty crooks but by the national political police, the FBI, under four administrations... by the time it got through, I won't run through the whole story, it was aimed at the entire new left, at the women's movement, at the whole black movement, it was extremely broad. Its actions went as far as political assassination."[34]

According to the Church Committee:

While the declared purposes of these programs were to protect the "national security" or prevent violence, Bureau witnesses admit that many of the targets were nonviolent and most had no connections with a foreign power. Indeed, nonviolent organizations and individuals were targeted because the Bureau believed they represented a "potential" for violence -- and nonviolent citizens who were against the war in Vietnam were targeted because they gave "aid and comfort" to violent demonstrators by lending respectability to their cause.

The imprecision of the targeting is demonstrated by the inability of the Bureau to define the subjects of the programs. The Black Nationalist program, according to its supervisor, included "a great number of organizations that you might not today characterize as black nationalist but which were in fact primarily black." Thus, the nonviolent Southern Christian Leadership Conference was labeled as a Black Nationalist-"Hate Group."

Furthermore, the actual targets were chosen from a far broader group than the titles of the programs would imply. The CPUSA program targeted not only Communist Party members but also sponsors of the National Committee to Abolish the House Un-American Activities Committee and civil rights leaders allegedly under Communist influence or deemed to be not sufficiently "anti-Communist". The Socialist Workers Party program included non-SWP sponsors of anti-war demonstrations which were cosponsored by the SWP or the Young Socialist Alliance, its youth group. The Black Nationalist program targeted a range of organizations from the Panthers to SNCC to the peaceful Southern Christian Leadership Conference, and included every black Student Union and many other black student groups. New Left targets ranged from the SDS to the InterUniversity Committee for Debate on Foreign Policy, from Antioch College ("vanguard of the New Left") to the New Mexico Free University and other "alternate" schools, and from underground newspapers to students' protesting university censorship of a student publication by carrying signs with four-letter words on them.

Examples of surveillance, spanning all presidents from FDR to Nixon, both legal and illegal, contained in the Church Committee report:[35]

- President Roosevelt asked the FBI to put in its files the names of citizens sending telegrams to the White House opposing his "national defense" policy and supporting Col. Charles Lindbergh.
- President Truman received inside information on a former Roosevelt aide's efforts to influence his appointments, labor union negotiating plans, and the publishing plans of journalists.
- President Eisenhower received reports on purely political and social contacts with foreign officials by Bernard Baruch, Eleanor Roosevelt, and Supreme Court Justice William O. Douglas.
- The Kennedy administration had the FBI wiretap a congressional staff member, three executive officials, a lobbyist, and a Washington law firm. US Attorney General Robert F. Kennedy received the fruits of an FBI wire tap on Martin Luther King, Jr. and an electronic listening device targeting a congressman, both of which yielded information of a political nature.
- President Johnson asked the FBI to conduct "name checks" of his critics and members of the staff of his 1964 opponent, Senator Barry Goldwater. He also requested purely political intelligence on his critics in the Senate, and received extensive intelligence reports on political activity at the 1964 Democratic Convention from FBI electronic surveillance.
- President Nixon authorized a program of wiretaps which produced for the White House purely political or personal information unrelated to national security, including information about a Supreme Court Justice. ·

The COINTELPRO documents show numerous cases of the FBI's intentions to prevent and disrupt protests against the Vietnam War. Many techniques were used to accomplish this task. "These included promoting splits among antiwar forces, encouraging red-baiting of socialists, and pushing violent confrontations as an alternative to massive, peaceful demonstrations." One 1966 COINTELPRO operation tried to redirect the Socialist Workers Party from their pledge of support for the antiwar movement.[36]

The FBI claims that it no longer undertakes COINTELPRO or COINTELPRO-like operations. However, critics have claimed that agency programs in the spirit of COINTELPRO targeted groups such as the Committee in Solidarity with the People of El Salvador,[37] the American Indian Movement,[5][38] Earth First!,[39] the White Separatist Movement,[40] and the Anti-Globalization Movement.[citation needed]

## Methods

According to attorney Brian Glick in his book *War at Home*, the FBI used four main methods during COINTELPRO:

1. Infiltration: Agents and informers did not merely spy on political activists. Their main purpose was to discredit and disrupt. Their very presence served to undermine trust and scare off potential supporters. The FBI and police exploited this fear to smear genuine activists as agents.
2. Psychological warfare: The FBI and police used myriad "dirty tricks" to undermine progressive movements. They planted false media stories and published bogus leaflets and other publications in the name of targeted groups. They forged correspondence, sent anonymous letters, and made anonymous telephone calls. They spread misinformation about meetings and events, set up pseudo movement groups run by government agents, and manipulated or strong-armed parents, employers, landlords, school officials and others to cause trouble for activists. They used bad-jacketing to create suspicion about targeted activists, sometimes with lethal consequences.[42]
3. Legal harassment: The FBI and police abused the legal system to harass dissidents and make them appear to be criminals. Officers of the law gave perjured testimony and presented fabricated evidence as a pretext for false arrests and wrongful imprisonment. They discriminatorily enforced tax laws and other government regulations and used conspicuous surveillance, "investigative" interviews, and grand jury subpoenas in an effort to intimidate activists and silence their supporters.[6]
4. Illegal force: The FBI conspired with local police departments to threaten dissidents; to conduct illegal break-ins in order to search dissident homes; and to commit vandalism, assaults, beatings and assassinations.[6][7][8][43] The object was to frighten or eliminate dissidents and disrupt their movements.



Body of Fred Hampton, national spokesman for the Black Panther Party, who was killed by members of the Chicago Police Department, as part of a COINTELPRO operation.[6][7][8][41]

The FBI specifically developed tactics intended to heighten tension and hostility between various factions in the black militancy movement, for example between the Black Panthers, the US Organization, and the Blackstone Rangers. This resulted in numerous deaths, among which were San Diego Black Panther Party members John Huggins, Bunchy Carter and Sylvester Bell.[6]

The FBI also conspired with the police departments of many U.S. cities (San Diego, Los Angeles, San Francisco, Oakland, Philadelphia, Chicago) to encourage repeated raids on Black Panther homes —often with little or no evidence of violations of federal, state, or local laws—which resulted directly in the police killing many members of the Black Panther Party, most notably Chicago Black Panther Party Chairman Fred Hampton on December 4, 1969.[6][7][8][44]